[Crim. No. 4271. First Dist., Div. One. Sept. 16, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. WALTER JEROME TAYLOR, Defendant and Appellant.

J. F. Thacher, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Albert W. Harris, Jr., Robert R. Granucci, Edward P. O'Brien and Michael J. Phelan, Deputy Attorneys General, for Plaintiff and Respondent.

SULLIVAN, J.—Defendant was charged in an information with a violation of section 459 of the Penal Code (burglary). The information also charged two prior felony convictions (auto theft and burglary). Defendant pleaded not guilty and not guilty by reason of insanity, but withdrew the latter plea shortly before trial. He thereafter admitted each of the two prior convictions charged in the information. A jury found defendant guilty of burglary of the first degree. He appeals from the judgment of conviction.

On March 14, 1962, at approximately 4:30 a.m., defendant entered the apartment of one J, A. Jackson in Oakland. The

apartment was on the ground floor. Mr. and Mrs. Jackson were asleep in their bedroom when Jackson was awakened by a noise. He heard his bathroom window being raised and also heard the rustle of shower curtains which were hung over the window. The bathroom was across the hall from the bedroom. Jackson saw the bathroom door steadily opening and then saw the figure of the defendant in the doorway. Defendant had a flashlight cupped in his hand, flashed the light a couple of times, stood by the open bedroom door momentarily, and then made his way down the hall in the direction of the living room, flashing the light as he went. At this point, Jackson, who had armed himself with a hunting knife, sprang out of bed, ran after the defendant, apprehended him in the living room and made him sit in a chair. Jackson then awoke his wife who called the police.

Officer Uhrenholt arrived at the apartment and placed defendant under arrest. A second police officer arrived immediately thereafter. Defendant was then searched. He was wearing an army field jacket in the large pocket of which he had placed his shoes. These were the only objects found on his person. The police found no weapons and no money or valuables of any kind. The search therefore established that defendant had taken nothing belonging to the Jacksons. A flashlight and rag were found near him on the floor.

It was subsequently discovered that defendant had made his entry into the bathroom by climbing on a table which he had moved from a neighboring yard.

Officer Uhrenholt took the defendant in a patrol car to the defendant's car which was parked about a block away. In the glove compartment of the latter vehicle, the officer found defendant's wallet, identification papers, wristwatch and other miscellaneous papers. Defendant was sober.

Defendant was the sole witness for the defense. He admitted entering the apartment but stated that his purpose in so doing was ''to see Mrs. Jackson.'' He testified on direct examination that he had no intent to commit any felony or to do anything or to molest Mrs. Jackson in any way. ''I went in to see her as a person. I went in to see her just as a person, Mrs. Jackson. That is about the only way I can answer that. ... I had seen Mrs. Jackson before and I guess mentally I was attracted to her by sight and I guess you would have to say more or less I had a feeling to see her again under any conditions.'' He further testified that he had seen her previously at a food store and on the street. On cross-exami-

nation defendant denied that on the morning of his arrest he had told either Jackson in the latter's apartment or Officer Uhrenholt in the patrol car that two men had forced him to enter the apartment to steal a P-38 revolver.

In rebuttal both Jackson and Uhrenholt testified that defendant had made such a statement to them. Oakland Police Inspector Bias, also called in rebuttal, testified that he had driven past the Jackson apartment with the defendant after the latter's arrest and that when he asked the defendant whether there was "any special reason for picking this place," defendant replied "no, it just looked better." The inspector thereupon asked defendant why he had given "a phony story about two men forcing you into the apartment to get a P-38" to which defendant's reply was "I had to say something."

 The sole question before us is whether the trial court committed prejudicial error in sustaining the People's objection to a question asked defendant by defense counsel (not his counsel on this appeal) as to whether he had ever undergone any psychiatric treatment. Defendant does not question the sufficiency of the evidence to support the verdict.

Direct examination of defendant was relatively brief, covering only four pages in the transcript. After narrating his entry and apprehension, defendant testified that when he entered the building he had no intent to commit any felony and that he entered to see Mrs. Jackson, explaining this in testimony set forth by us above. Immediately after the first part of his explanation, the following took place: "Q. Let me ask you this, Mr. Taylor. Have you ever undergone any psychiatric treatment? MR. BALDWIN: Object, Your Honor. That is separate proceedings. THE COURT: That is separate proceedings. There is no plea of not guilty by reason of insanity. MR. HOFFMAN: Your Honor, on this matter the claim here is not one of not guilty by reason of insanity but attempt to show the background and motive and intent of this man. THE COURT: That is all right but whether he is psychotic is something different." Defendant then proceeded with a further explanation as to why he wanted to see Mrs. Jackson. The direct examination then concluded with a statement by defendant that he had been charged with a violation of a Penal Code section involving "Peeping Tom."[1]

---

[1]The record does not further enlighten us. The reference is probably to either Penal Code section 647, subdivision 12, as it existed prior to the 1961 repeal or section 647, subdivision (g), as enacted in 1961.

■ Defendant was charged in the information with entering the building "with the intent to commit theft." This specific intent was an essential element of the crime (*People* v. *Morlock* (1956) 46 Cal.2d 141, 146 [292 P.2d 897]) and therefore a material issue in the case. It was incumbent upon the People to prove that the entry was made with the requisite specific intent (*People* v. *Wilson* (1958) 158 Cal. App.2d 553, 555 [322 P.2d 966]; *People* v. *Garcia* (1958) 166 Cal.App.2d 141, 143 [333 P.2d 69]) although this could be proved circumstantially, such intent being rarely susceptible of direct proof (*People* v. *Nichols* (1961) 196 Cal.App.2d 223, 227 [16 Cal.Rptr. 328]; *People* v. *Garcia, supra*).

■ Defendant contends that the evidence offered was relevant on the issue of his specific intent and therefore admissible. "The general test of relevancy of indirect evidence is whether it tends logically, naturally, and by reasonable inference to prove or disprove a material issue." (*People* v. *Jones* (1954) 42 Cal.2d 219, 222 [266 P.2d 38], citing *inter alia People* v. *Peete* (1946) 28 Cal.2d 306, 315 [169 P.2d 924].) ■ In the case of a crime involving specific intent, the jury is called upon to determine the existence of such nonobjective fact, i.e., the specific intent or state of mind and must therefore be as completely informed as possible of all the circumstances connected with the offense which manifest such intention. (*People* v. *Wells* (1949) 33 Cal.2d 330, 356 [202 P.2d 53].) Hence under his plea of not guilty, the defendant may present any evidence, not amounting to proof of legal insanity, which tends to prove the specific intent or state of mind involved. (*People* v. *Wells, supra*, 33 Cal.2d 330, 346-358; *People* v. *Jones, supra*, 42 Cal.2d 219, 223, 226; *People* v. *Gorshen* (1959) 51 Cal.2d 716, 732-733 [336 P.2d 492]; *People* v. *Gibson* (1949) 92 Cal. App.2d 55, 67 [206 P.2d 375].) This includes the testimony of a psychiatrist. (See, e.g., *Wells, Jones* and *Gorshen, supra*.)

■ We think therefore that the trial court was in error in its apparent ruling that evidence of the psychiatric treatment of the defendant was not admissible except under a plea of not guilty by reason of insanity. Nevertheless this does not necessarily mean that the evidence which was offered by the defendant was erroneously excluded, since it must appear that it was relevant on the issue of specific intent. We are not convinced that the meager and somewhat unclear record before us establishes such relevancy. It discloses, as we have already set forth, that in the midst of the defendant's expla-

nation as to why he entered the building, defendant was asked if he had "ever undergone any psychiatric treatment." The question is certainly *ex abrupto* under the circumstances of the examination. No prefatory question or remarks of counsel shed any light on it. Its language is general, specifying neither the particular treatment nor the particular mental disorder of the defendant to which the alleged treatment was directed. The question on its face gives no suggestion that the evidence sought to be elicited would tend to prove that the defendant entered the apartment for reasons consistent with his theory of defense. We think that defendant should have made his question more specific. Defendant made no attempt to do this or to pursue the subject further.[2]

Furthermore we point out that no argument can be made on this record that the court should have permitted defendant to answer the question on the ground that it was preliminary. Such claim might have some validity if, for example, the purpose of the question was merely to establish the fact of psychiatric treatment and identify the psychiatrist preparatory to his eventual production as a witness. But this is not the record. Defendant did not call a psychiatrist (cf. *Wells, Jones* and *Gorshen, supra*) and at no time indicated to the court below that he intended to do so. Indeed, defendant makes no claim before us that such was his intention and that the controversial question was merely a preliminary one.

█ Assuming *arguendo* that the court should have permitted the defendant to answer the question, we fail to see how under all the circumstances he was prejudiced thereby. He had testified directly that he had no intent to commit theft or any felony and gave an explanation as to his alleged purpose in entering the apartment. There appears to have been little else that he himself could have added. While he might have testified that he had undergone psychiatric treatment, he could not have testified to any doctor's diagnosis of his condition, which would have been hearsay, or given a medical opinion himself. He made no offer to qualify himself as an expert. Nor did he make an offer, or give any indication that he intended to produce a psychiatrist as a

[2]As already indicated, the record on this point is not clear. After defense counsel stated that his purpose was to show motive and intent, the court responded "[t]hat is all right but whether he is psychotic is something different." (Italics added.) We cannot conclude from this that the court completely shut off this line of inquiry.

witness on his behalf. Indeed, based on what is before us, it is fair conclusion that he had no intention at any time to call a psychiatrist. Defendant has made no such claim either in his briefs or on oral argument.

As we have pointed out, evidence was received of contradictory statements made by defendant as to the purpose of his entering the apartment. All in all, the jury could have justifiably regarded his story as preposterous. The case was by no means a close one. After a review of the entire case, including the evidence, we are of the opinion that it is not reasonably probable that the jury's verdict would have been different if the defendant had been permitted to answer the question involved. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

The judgment is affirmed.

Bray, P. J., and Molinari, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 13, 1963.