[No. 684-3.    Division Three.    April 12, 1973.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT ALLEN WELSH, *Appellant*.

*Norman D. Brock* (of *Underwood, Campbell, Zellmer & Kain*), for appellant (appointed counsel for appeal).

*Philip Borst, Prosecuting Attorney*, for respondent.

MUNSON, J.—Defendant appeals a conviction for second-degree assault committed against his former wife, Joyce, with a straight-edged razor.

On the evening of December 13, 1971, defendant went to

see Joyce at her residence. During the course of an argument defendant requested the return of Joyce's wedding rings. Joyce got the rings and a straight-edged razor belonging to defendant, a barber by trade. She threw these items on the rug, in front of defendant, causing the razor to fly open. As defendant bent over to pick up the items, he made some comment with respect to Joyce dating other men. The comment frightened her. As a consequence, she grabbed defendant's wrists as he stood up and a short struggle ensued. During the course of the struggle, Joyce was cut with the razor. She landed on a sofa with defendant standing over her, holding the open razor. He continued to question her about her dating until he was told the name of the man she had dated. Defendant telephoned this man and had Joyce tell him to stay away from her.

At the jury trial, evidence was introduced to establish that defendant was suffering from a condition known as psychomotor epilepsy at the time of the incident in question. Joyce stated defendant had been involved in past incidents which he could not later remember. Each incident was a "spontaneous thing", usually precipitated by consumption of alcohol. She testified defendant had been drinking that evening but was not drunk. She said defendant had been receiving care and treatment for this condition from Dr. James Jardee. She also indicated that at the time of the struggle, defendant was "wild-eyed" but after he made the phone call he appeared to calm down and develop an awareness of what was going on. She further testified the incident with the razor could have been a "spontaneous thing" comparable to those defendant previously experienced.

Dr. Jardee, a general practitioner in Lind, Washington, testified he treated defendant for a typical seizure disorder, psychomotor epilepsy. Psychomotor epilepsy was described as a condition of mental cloudiness or unconscious automatic behavior. During such a seizure, there is no conscious intent to perform acts done. The seizures defendant experi-

enced were definitely precipitated by alcohol and were not remembered afterwards. Dr. Jardee stated defendant behaved in an uncommon way during such seizures in the past and had been in some trouble due to his past actions during these seizures.

Testimony indicated defendant called Dr. Jardee from jail on the night of the incident and that defendant's speech appeared to Dr. Jardee to be different from his normal speech pattern. He stated it was possible defendant experienced a psychomotor seizure at the time of the alleged assault.[1]

During defendant's closing argument to the jury, the court, in sustaining plaintiff's objection, disallowed any comment by defense counsel with respect to Joyce's testimony concerning defendant's mental state and his psychomotor epileptic condition.

The court also gave the following instruction regarding Dr. Jardee's testimony:

> You are instructed that you are to ignore and disregard the testimony of Dr. Jardee insofar as it bears upon the defendant's mental state at the time of the commission of the alleged assault.

The following reason for so ruling was given:

> THE COURT: I think I should answer that last exception. The defense of psychomotor epilepsy is nothing more than another way of urging mental irresponsibility. The defendant has elected not to urge the defense of mental irresponsibility [not guilty by reason of insanity] and, in fact, has deliberately withdrawn that defense that was once urged. Having done so he has made his election not to rely on it and therefore the doctor's testimony is improper and could only serve to mislead the jury and it should be stricken and they should be instructed to disregard it, and that is why that instruction is here.

---

[1]For additional discussion of psychomotor epilepsy *see* H. Houston Merritt, M.D., *A Textbook of Neurology*, 753-63 *et seq.* (Lea & Febiger, 4th ed. 1967); Green & Steelman, *Epileptic Seizures* (Williams & Wilkins Co. 1956); *The Best of Law & Medicine, AMA* (1968); *Lawyers' Medical Cyclopedia,* Vol. 3, § 17.9, at 15, 18-19, § 22.13, at 379, 385 *et seq.* (rev. 1970).

Defendant assigns error to the disallowance of comment concerning Joyce's testimony about defendant's mental state and the exclusion of Dr. Jardee's testimony, contending such testimony was relevant with respect to whether defendant had the requisite intent to commit an assault. He contends the exclusion of this evidence denied him the right to show lack of intent. We agree.

It is not necessary to plead mental irresponsibility in order to prove lack of intent. Evidence of mental disease or defect which falls short of criminal insanity is admissible if relevant to prove lack of specific intent. *State v. Huff,* 76 Wn.2d 577, 579, 458 P.2d 180 (1969); *State v. White,* 60 Wn.2d 551, 588, 374 P.2d 942 (1962); *State v. Carter,* 4 Wn. App. 115, 117, 479 P.2d 543, *aff'd on rehearing,* 5 Wn. App. 802, 490 P.2d 1346 (1971); *see also People v. Taylor,* 220 Cal. App. 2d 212, 33 Cal. Rptr. 654 (1963).

The term "criminal insanity" is synonymous with the term "mental irresponsibility". The *M'Naghten* test for insanity, as a defense to a criminal prosecution, is still the rule in this state. *State v. Boggs,* 80 Wn.2d 427, 495 P.2d 321 (1972); *State v. Reece,* 79 Wn.2d 453, 486 P.2d 1088 (1971); *State v. Tyler,* 77 Wn.2d 726, 739, 466 P.2d 120 (1970); *State v. White, supra.*

The medical testimony in this case indicates no inability on the part of defendant to differentiate between right and wrong. The testimony, if believed, showed defendant to be incapable of consciously, intentionally, and knowingly acting while experiencing a psychomotor seizure. As such, it does not form the basis for a special plea of insanity under RCW 10.76.010. *Cf. People v. Martin,* 87 Cal. App. 2d 581, 197 P.2d 379 (1948); *Carter v. State,* 376 P.2d 351 (Okla. Crim. 1962).

It is undisputed that during a psychomotor seizure, a person is not conscious of his behavior; his actions are automatic. *Cf. People v. Williams,* 22 Cal. App. 3d 34, 99 Cal. Rptr. 103 (1971). Thus, when such a defense is raised, it goes to the issue of intent to commit the act. *Cooley v.*

*Commonwealth,* 459 S.W.2d 89 (Ky. 1970); *Commonwealth v. Crosby,* 444 Pa. 17, 279 A.2d 73 (1971).

An "act" committed while one is unconscious is in reality no act at all. It is merely a physical event or occurrence for which there can be no criminal liability.

*State v. Utter,* 4 Wn. App. 137, 143, 479 P.2d 946 (1971).

Before testimony (as that here in issue) is admitted to show a lack of specific intent, a proper foundation must be presented. *State v. Huff, supra; State v. Carter, supra; State v. Utter, supra.* Defendant did so here. Therefore, the court was in error in holding that the evidence given by Dr. Jardee and Joyce was not to be considered. Defendant only had the burden of producing such evidence as would raise a reasonable doubt in the mind of the jury as to whether he intentionally committed the act. *People v. Hardy,* 33 Cal. 2d 52, 198 P.2d 865 (1948).

■ The issue, however, does not end there. The evidence would support a finding that defendant's propensity for these seizures only occurs after he has been drinking. The evidence would support a finding that he knew that after only two beers he may have such a seizure, a fact which had been conveyed to him by Dr. Jardee. Therefore, the issue of voluntary intoxication, *i.e.,* RCW 9.01.114, becomes an issue. We appreciate this matter was not raised in the trial court but it is so entwined in the issue here presented that we anticipate it will become an issue upon retrial. As stated in *State v. Utter, supra* at 143:

When the state of unconsciousness is voluntarily induced through the use and consumption of alcohol or drugs, then that state of unconsciousness does not attain the stature of a complete defense. Thus, in a case such as the present one where there is evidence that the accused has consumed alcohol or drugs, the trial court should give a cautionary instruction with respect to voluntarily induced unconsciousness.

The issue of whether or not the appellant was in an unconscious or automatistic state at the time he allegedly committed the criminal acts charged is a question of fact.

[5] Upon retrial, assuming the evidence is as in the

record presently before us, an instruction pursuant to RCW 9.01.114 should be given. A charge of second-degree assault involves the element of specific intent. *State v. Conklin,* 79 Wn.2d 805, 807, 489 P.2d 1130 (1971); *State v. Turner,* 78 Wn.2d 276, 284, 474 P.2d 91 (1970); *State v. Gomez,* 3 Wn. App. 763, 477 P.2d 658 (1970); *State v. Mello,* 3 Wn. App. 555, 477 P.2d 42 (1970), *rev'd on other grounds,* 79 Wn.2d 279, 484 P.2d 910 (1971). *See State v. Miller,* 177 Wash. 442, 462, 32 P.2d 535 (1934).

Lastly, defendant challenges the giving of instruction No. 6, which states in part:

> Whether there has been an "assault" in a particular case depends more on the apprehension created in the mind of the person assaulted than on the undisclosed intention of the person committing the assault.

We find no error. *State v. Frazier,* 81 Wn.2d 628, 503 P.2d 1073 (1972). It is unnecessary to consider defendant's other assignments of error.

Judgment is reversed and the case is remanded for retrial.

GREEN, C.J., and McINTURFF, J., concur.