[No. 11696-1-II.  Division Two.  April 11, 1991.]

THE STATE OF WASHINGTON, *Respondent*, v. ALLEN WARREN SWAGERTY, *Appellant*.

*Brian P. Coughenour,* appointed counsel for appeal, for appellant.

*David H. Bruneau, Prosecuting Attorney,* for respondent.

MORGAN, J.—Allen Swagerty appeals his conviction for statutory rape in the first degree. We affirm.

On September 24, 1987, Debra Macks and her 5–year–old daughter visited Allen Swagerty, his wife and children. Macks and Swagerty consumed alcohol and marijuana, and both became intoxicated. Macks then went home, leaving her daughter with the Swagerty family. When Macks returned, the daughter said that Swagerty had raped her.

Within a short time, Swagerty was arrested, and in a police interview he admitted digital but not penile penetration. Later, he told a jailer, "I did it." A pediatrician examined the girl and found that her genitals were bruised and red. Laboratory analysis showed spermatozoa in her anal

area, seminal fluid on her pajama bottoms, and a pubic hair similar to the defendant's on her pajama bottoms.

At trial, Swagerty's theory was voluntary intoxication and diminished capacity. He testified that on the night in question, he had ingested beer, whiskey, "pot," "speed," Valium and cocaine, and that as a result, he was in a "blackout" state from when Mack went home until he awoke in jail the next day. He offered the testimony of John Hutt, an alcohol and drug counselor, and he proposed jury instructions on voluntary intoxication and diminished capacity. The trial court excluded part of Hutt's proposed testimony and declined to give the jury instructions. Swagerty was convicted and given an exceptional sentence upward.

On appeal, Swagerty makes three contentions. He argues that the trial court erred by (1) excluding part of Hutt's testimony, (2) refusing to give his proposed jury instructions, and (3) imposing an exceptional sentence. We consider the jury instructions first.

## I
### Jury Instructions

The defendant appeals the trial court's refusal to give seven of his proposed jury instructions.[1] In his brief, he summarizes his argument this way:

> Although the crime of Statutory Rape in First Degree is a crime that does not have an element of intent, the defendant must know what he is doing, that is having sexual contact with someone, in order to commit the crime at all. The defendant's argument [at trial] was that because of his level of impairment,

---

[1] All seven instructions were similar, and it is unnecessary to quote all of them. A representative sample is the following:

If you find from the evidence that at the time the alleged crime was committed, the defendant had substantially reduced mental capacity, whether caused by mental illness, mental defect, intoxication, or any other cause, you must consider what effect, if any, this diminished capacity had on the defendant's ability to form the requisite intent.

Thus, if you find that the defendant's mental capacity was diminished to the extent that you have a reasonable doubt whether he acted with the requisite intent you cannot find him guilty of Statutory Rape in the First Degree.

he did not know what he was doing, let alone that it was a crime. . . . Because the court would not allow the jury to be instructed as to diminished capacity, the defendant was not able to argue his theory of the case to the jury.

As the defendant acknowledges in this passage, the legislative definition of statutory rape in the first degree that was in effect on the date of offense did not require proof of specific intent, or of any other mental state. RCW 9A.44.070, repealed by Laws 1988, ch. 145, § 24, effective July 1, 1988; *State v. Abbott,* 45 Wn. App. 330, 331, 726 P.2d 988 (1986), *review denied,* 107 Wn.2d 1027 (1987). It provided simply that a person committed statutory rape in the first degree if he or she was over 13 and had sexual intercourse with another person under 11.

Because the Legislature's definition of statutory rape did not require proof of specific intent or of any other mental state described in RCW 9A.08.010, diminished capacity was not available to the defendant. Diminished capacity allows a defendant to assert that because he was subject to a mental disorder, there is a reasonable doubt about whether he harbored a specific intent or mental state required as an element of the crime charged. *State v. Griffin,* 100 Wn.2d 417, 418–19, 670 P.2d 265 (1983); *State v. Ferrick,* 81 Wn.2d 942, 944, 506 P.2d 860, *cert. denied,* 414 U.S. 1094 (1973); *State v. Gough,* 53 Wn. App. 619, 622, 768 P.2d 1028, *review denied,* 112 Wn.2d 1026 (1989); *State v. Thamert,* 45 Wn. App. 143, 146, 723 P.2d 1204, *review denied,* 107 Wn.2d 1014 (1986); *State v. Edmon,* 28 Wn. App. 98, 103–04, 621 P.2d 1310, *review denied,* 95 Wn.2d 1019 (1981). Diminished capacity simply does not apply when the crime charged does not require proof of a specific intent or mental state. *State v. Edmon, supra.* In evidential terms, diminished capacity is irrelevant under such circumstances, because the defendant's mental state is not a fact of consequence to the action. ER 401.

Because the Legislature's definition of statutory rape did not require proof of specific intent or any other mental state, voluntary intoxication was also not available to the

defendant. For the same reasons as with diminished capacity, evidence of voluntary intoxication may be used to negate a defendant's mental state when the existence of a particular mental state is a necessary element of the crime charged, RCW 9A.16.090;[2] *State v. Brooks,* 97 Wn.2d 873, 879, 651 P.2d 217 (1982); *State v. Mriglot,* 88 Wn.2d 573, 575–77, 564 P.2d 784 (1977); *State v. Conklin,* 79 Wn.2d 805, 807, 489 P.2d 1130 (1971); *State v. Washington,* 34 Wn. App. 410, 661 P.2d 605 (1983), but not otherwise. RCW 9A.16.090; *State v. Geer,* 13 Wn. App. 71, 75–76, 533 P.2d 389 (1975) (voluntary intoxication not available in forcible rape case); *State v. Norby,* 20 Wn. App. 378, 381, 579 P.2d 1358 (1978) (same for simple assault case).

With diminished capacity and voluntary intoxication being unavailable to the defendant, did he have the right to argue that he should be absolved of criminal responsibility because he did not know what he was doing? The answer is both yes and no. He had the right to plead the defense of insanity, *State v. Jones,* 99 Wn.2d 735, 664 P.2d 1216 (1983)—which he did not do—and, assuming sufficient evidence, *State v. Wicks,* 98 Wn.2d 620, 622, 657 P.2d 781 (1983), to argue that he should be absolved of criminal responsibility because *mental disease or defect* caused him to be unable to perceive the nature and quality of the act charged. RCW 9A.12.010; *State v. Box,* 109 Wn.2d 320, 322, 745 P.2d 23 (1987); *State v. Crenshaw,* 98 Wn.2d 789, 805, 659 P.2d 488 (1983). However, he had no right to argue that he should be absolved of criminal responsibility because *voluntary intoxication* caused him to be unaware of the nature and consequences of the act charged for Washington's express policy is that no act shall be deemed less

___

[2]RCW 9A.16.090 provides,

"No act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his condition, but whenever the actual existence of any particular mental state is a necessary element to constitute a particular species or degree of crime, the fact of his intoxication may be taken into consideration in determining such mental state."

criminal by reason of voluntary intoxication.[3] RCW 9A.16-.090; *State v. Geer, supra; State v. Norby, supra.*

With this background, we can now see that the trial court was correct in refusing to give the defendant's proposed instructions. All were founded on the premise that the State could impose criminal liability only if it proved a specific intent or mental state beyond a reasonable doubt, or on the closely related premise that the defendant could avoid criminal liability if he showed that there was a reasonable doubt concerning his intent or mental state. Neither premise was correct, and this was true regardless of how voluntarily intoxicated the defendant was.

■ Moreover, the defendant was not entitled to the instructions so he could argue to the jury that he should not be convicted because he did not know what he was doing. There was no evidence of any lack of awareness due to mental disease or defect, and thus no issues involving the defense of insanity. There was abundant evidence of voluntary intoxication, but assuming that such intoxication completely wiped out defendant's ability to perceive what he was doing, the defendant was not entitled to argue that it affected the criminality of his actions.

## II
### EXPERT TESTIMONY

At trial, the defendant offered to have John Hutt express an opinion as to the effects of intoxicants on the defendant at the time of the offense. On objection from the State, the trial court excluded the offer, although it allowed certain other aspects of the witness' testimony.

---

[3]Certain exceptions are not pertinent here. They include intoxication that triggers an underlying psychotic disorder, *State v. Wicks,* 98 Wn.2d 620, 622, 657 P.2d 781 (1983), or a psychomotor seizure, *State v. Welsh,* 8 Wn. App. 719, 722–23, 508 P.2d 1041 (1973), or that combines with external stimuli to create a "true conditioned response." *State v. Perkins,* 14 Wn. App. 27, 32, 538 P.2d 829 (1975); *State v. Utter,* 4 Wn. App. 137, 141–43, 479 P.2d 946 (1971).

For two reasons, the trial court was correct in excluding the offer. First, whether a proposed expert is sufficiently qualified to express an opinion that "will assist the trier of fact to understand the evidence or to determine a fact in issue" (ER 702) is a matter within the trial court's discretion, *Orion Corp. v. State*, 103 Wn.2d 441, 462, 693 P.2d 1369 (1985); *Oliver v. Pacific Northwest Bell Co.*, 106 Wn.2d 675, 683, 724 P.2d 1003 (1986); *Bruce v. Byrne–Stevens & Assocs. Eng'rs, Inc.*, 113 Wn.2d 123, 130, 776 P.2d 666 (1989), and this is no less true when diminished capacity testimony is offered than when other expert testimony is offered. *Cf. State v. Eaton*, 30 Wn. App. 288, 292–93, 633 P.2d 921 (1981) (after "proper foundation", expert may give diminished capacity testimony); *State v. Edmon*, 28 Wn. App. at 102 (listing various requirements for expert testimony on diminished capacity, one of which is that the expert be qualified); *State v. Thamert*, 45 Wn. App. at 147 (same). Here, Hutt testified that he was an alcohol counselor who had a correspondence degree in sociology, but no training in toxicology, pharmacology, psychology, chemistry or physics. Given these particular qualifications, the trial court acted within its discretion when it determined Hutt was not qualified to give an opinion that would assist the jury.

Second, the offered opinion was irrelevant, because it had no tendency to prove or disprove a fact of consequence to the action. ER 401. As discussed above, the definition of statutory rape did not require proof of a specific intent or mental state, *State v. Abbott, supra,* and whatever act may have been committed by the defendant was neither more nor less criminal by virtue of his voluntary intoxication. RCW 9A.16.090.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder

shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

Affirmed.

WORSWICK, C.J., and PETRICH, J., concur.