[No. 10678-1-III.   Division Three.   March 3, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. KENNETH WAYNE DAVIS, *Appellant*.

512

*Joy E. VanNostern,* for appellant.

*Gerald A. Matosich, Prosecuting Attorney,* and *Richard L. Walker, Deputy,* for respondent.

MUNSON, J. — Kenneth Davis appeals his convictions of felony murder in the second degree, RCW 9A.32.050(1)(b), and second degree assault, RCW 9A.36.021(1)(a). He contends the trial court erred in (1) granting the State's motion to exclude testimony as to diminished capacity, (2) permitting the State to amend the complaint on the morning of trial, (3) refusing his proposed jury instructions, and (4) improperly responding to a question from the jury during deliberations. We reverse the murder conviction and affirm the assault conviction.

One morning in May 1989, Joyce Davis told her husband she was leaving him and taking their 16-year-old daughter with her. They were living in The Dalles, Oregon, at the time. Although Mr. Davis later saw his daughter and talked to her on several occasions, he contended he did not know where to find her. In the days that followed, Mr. Davis spent much of his time driving around The Dalles, looking for his wife and daughter. Eventually he became despon-

dent, threw some of his clothes, typewriter, guns, towels, and other belongings, into his pickup truck, and began driving south. He found himself in Reno, Nevada, where he rented a motel room. He called his employer and was advised he still had a job. He slept briefly, then began driving back to The Dalles. He got lost several times, ran out of gas and his radiator boiled over, before he finally returned home. On his return, he again drove around looking for his wife and daughter, and finally found his wife's car in nearby Dallesport, Washington. As he approached the car he was confronted by a man who, when asked if he knew where Mrs. Davis was, offered to beat his head in.

Mr. Davis returned to his home in Oregon and found his son and several strangers there. His son, who appeared drunk, began arguing with him and subsequently physically threw him out of the house. Feeling desperate and suicidal, Mr. Davis again drove to Dallesport in the hope of finding his daughter. When he arrived at the apartment building where he believed his wife was, he took a hunting rifle from his truck, and approached the apartment door.[1] He tried to open the door, and when he found it was locked he began kicking it, then breaking the glass panes with the barrel of his rifle. He had quit breaking glass and was holding the rifle across his chest when the door suddenly opened and a man lunged at him, grabbing the rifle. In the ensuing struggle the gun went off, killing the other man, Marion Charles Hayes.

Mr. Davis entered the apartment. His wife, who was standing in the middle of the darkened room, lunged at him with her hands shoulder high; he struck her with the gun stock, knocking her to the floor and breaking her nose. After making sure she was breathing, Mr. Davis left the apartment, went to his brother's home and asked him to take him to the police station.

On the morning of trial, the court permitted the State to amend count 2, the assault charge involving the wife, from

---

[1]There is no explanation how he arrived at the right apartment.

"intentionally assaulted another and thereby inflicted substantial bodily harm . . .", RCW 9A.36.021(1)(a), to "assaulted Joyce Lee Davis with a deadly weapon . . .", RCW 9A.36.021(1)(c).[2] The court also ruled Mr. Davis' proposed expert witness would not be permitted to testify on the issue of diminished capacity because this defense is inapplicable to a charge of murder in the second degree based on second degree assault with a deadly weapon. The defense motion for a continuance was denied.

First, Mr. Davis contends the trial court erred in preventing him from presenting a defense of diminished capacity.

The diminished capacity defense allows a defendant to show that, because of a mental disorder, he lacked the mental state required as an element of the crime charged. *State v. Swagerty*, 60 Wn. App. 830, 833, 810 P.2d 1 (1991); *State v. Gough*, 53 Wn. App. 619, 622, 768 P.2d 1028, *review denied*, 112 Wn.2d 1026 (1989). Under the common law, an assault is an intentional act. *State v. Mathews*, 60 Wn. App. 761, 766-67, 807 P.2d 890 (1991); *State v. Davis*, 60 Wn. App. 813, 820, 808 P.2d 167 (1991); *State v. Sample*, 52 Wn. App. 52, 757 P.2d 539 (1988); *State v. Jones*, 34 Wn. App. 848, 664 P.2d 12 (1983). The requisite intent may be either an intent to inflict bodily injury, to touch or strike, or to cause apprehension of bodily harm. *Mathews*, at 766-67; *State v. Krup*, 36 Wn. App. 454, 458-59, 676 P.2d 507, *review denied*, 101 Wn.2d 1008 (1984).

*State v. Edmon*, 28 Wn. App. 98, 104, 621 P.2d 1310, *review denied*, 95 Wn.2d 1019 (1981) suggests diminished capacity may only be used to negate a "specific intent", *i.e.*, an intent to produce a specific result, as opposed to an intent to do the physical act. The elements of some crimes

---

[2]The information on the first count does not allege that the assault upon which the felony murder charge is predicated was intentional. To establish felony murder, the State must prove the state of mind necessary to commit the underlying felony. *State v. Bowerman*, 115 Wn.2d 794, 807, 802 P.2d 116 (1990). The original information on the second count alleged intentional assault, but the amended information as to count 2 charged assault with a deadly weapon. *See State v. Hopper*, 118 Wn.2d 151, 822 P.2d 775 (1992), *rev'g* 58 Wn. App. 210, 792 P.2d 171 (1990).

do require a specific intent: for example, RCW 9A.32-.030(1)(a), murder in the first degree; RCW 9A.36.011(1), assault in the first degree; RCW 9A.36.021(1)(b), (d), assault in the second degree; and RCW 9A.40.020, kidnapping in the first degree. The four levels of culpability defined in RCW 9A.08.010, as intent, knowledge, recklessness, and criminal negligence were designed to replace the concepts of specific and general intent, *State v. Allen*, 101 Wn.2d 355, 359, 678 P.2d 798 (1984), but, as indicated, specific intent elements are contained in some crimes. *State v. Griffin*, 100 Wn.2d 417, 418-19, 670 P.2d 265 (1983) notes that the prior distinction between specific intent and general intent must be modified because of RCW 9A.08.010, further noting:

> Diminished capacity instructions are to be given whenever there is substantial evidence of such a condition and such evidence logically and reasonably connects the defendant's alleged mental condition with the inability to possess the required level of culpability to commit the crime charged.

*See also State v. Poulsen*, 45 Wn. App. 706, 708-09, 726 P.2d 1036 (1986).

*Swagerty*, at 833, held diminished capacity was not a defense to a statutory rape defendant because "the Legislature's definition of statutory rape did not require proof of specific intent *or of any other mental state* . . .". (Italics ours.) Diminished capacity is a defense to the intent element of second degree assault.

██ A diminished capacity defense must be supported by evidence of a mental condition and its "logical and reasonable" connection with the defendant's inability to possess the relevant mental state. *Griffin*, at 419. "Diminished capacity arises out of a mental disorder, usually not amounting to insanity, that is demonstrated to have a specific effect on one's capacity to achieve the level of culpability required for a given crime." *Gough*, at 622.

Emotions like jealousy, fear, anger, and hatred are not considered mental disorders. *State v. Moore*, 61 Wn.2d 165, 377 P.2d 456 (1963); *Edmon*, at 103. They have been viewed as acting upon the individual's capacity to control his

behavior, causing an "irresistible impulse", which differs from the capacity to form an intent, and has been rejected as a form of diminished capacity. *Moore*, at 172; *see State v. White*, 60 Wn.2d 551, 589-93, 374 P.2d 942 (1962), *cert. denied*, 375 U.S. 883 (1963).

In order to be admissible on the issue of diminished capacity, testimony must show how the alleged mental condition impaired the defendant's ability to possess the required level of culpability. *See Griffin*, at 418-19; *Edmon*, at 103. For example, in *State v. Welsh*, 8 Wn. App. 719, 720, 508 P.2d 1041 (1973), Mr. Welsh's doctor testified he suffered from psychomotor epilepsy, and explained this was "a condition of mental cloudiness or unconscious automatic behavior. During such a seizure, there is no conscious intent to perform acts done."

Here, as in *Edmon*, expert psychiatric testimony showed the defendant suffered from anxiety and depression, medically recognized disorders. In *Edmon*, however, the psychiatrist testified these disorders gave rise to an additional mental condition, reduced perception of reality, which directly affected the defendant's ability to form an intent.

Mr. Davis made an offer of proof consisting of a report by a psychiatrist indicating at the time of the shooting Mr. Davis was suffering from acute anxiety and significant depression, concluding he lacked the ability to form premeditation or an intent. However, the report makes no logical connection between the diagnosed disorders and the conclusion as to Mr. Davis' lack of capacity to form an intent. Neither the report nor the facts evidenced any reduced perception of reality. Mr. Davis had sufficient presence of mind, after being ejected from the parking lot where his wife's car was parked and subsequently from his home, to drive his vehicle back to Dallesport, take the only fully loaded rifle in his truck and go to the victim's apartment. He had not been to the actual apartment previously, only on the grounds. Mr. Davis explained: "I grabbed a gun because the guy said he was going to beat my head in. I thought it would keep him from doing that while I was

trying to talk." His diminished capacity defense fails for lack of adequate foundation for the proffered expert testimony. The evidence was properly excluded.

■ Second, Mr. Davis contends the court violated his right to prepare a defense by permitting the State to amend the information on the morning of trial and denying his request for a continuance for the purpose of preparing a defense to the amended charge. "The court may permit any information or bill of particulars to be amended at any time before verdict or finding if substantial rights of the defendant are not prejudiced." CrR 2.1(e). *But see State v. Pelkey*, 109 Wn.2d 484, 490, 745 P.2d 854 (1987).

Mr. Davis has failed to indicate he had any defense to the amended charge of assaulting "Joyce Lee Davis with a deadly weapon" that was not available as a defense to the prior charge of "intentionally assaulted another and thereby inflicted substantial bodily harm." He has never argued a rifle is not a deadly weapon. Merely specifying a different manner of committing the crime originally charged is not error unless prejudice is demonstrated. *Pelkey*. Denial of a continuance under these circumstances was not prejudicial.

■ Third, Mr. Davis contends he was entitled to have his proposed instructions on self-defense, and lesser included manslaughter offenses, given to the jury. "[E]ach side is entitled to have the jury instructed on [its] theory of the case if there is evidence to support it". *State v. Hansen*, 46 Wn. App. 292, 299, 730 P.2d 706, 737 P.2d 670 (1986).

■ In order to establish self-defense, a defendant must show his conduct was "what a reasonably cautious and prudent person in similar circumstances would have done and . . . he reasonably believed he was in danger of bodily harm." *State v. Theroff*, 95 Wn.2d 385, 390, 622 P.2d 1240 (1980). The court may refuse to give a self-defense instruction if there is no evidence the defendant acted in legitimate self-defense. *State v. Currie*, 74 Wn.2d 197, 198, 443 P.2d 808 (1968). The defense is unavailable to a defendant who is the aggressor in the sense that his actions precipitated or provoked the altercation which necessitated his use of force.

*Currie*, at 198-99; *State v. Sampson*, 40 Wn. App. 594, 600, 699 P.2d 1253, *review denied*, 104 Wn.2d 1005 (1985).

Mr. Davis admitted driving to the victim's home, arming himself with a rifle, and breaking the windows in the door. In response, the victim, upon opening the door and seeing the gun, attempted to wrest it from Mr. Davis' grasp. Under these circumstances no reasonable trier of fact could find Mr. Davis acted in self-defense.

■ Mr. Davis requested instructions on first and second degree manslaughter as lesser included offenses of the second degree murder of Mr. Hayes. Lesser included offense instructions should be given if each element of the lesser offense is a necessary element of the greater offense, and the evidence supports the inference the lesser crime was committed. *State v. Workman*, 90 Wn.2d 443, 584 P.2d 382 (1978).

■ Mr. Davis was charged with felony murder under RCW 9A.32.050, which provides in part:[3]

(1) A person is guilty of murder in the second degree when:
. . . .
(b) He commits or attempts to commit any felony other than those enumerated in RCW 9A.32.030(1)(c) [the first degree felony murder statute], and, in the course of and in further-ance of such crime or in immediate flight therefrom, he, or another participant, causes the death of a person other than one of the participants; . . .[.]

In order to support a felony murder charge based on an assault, the underlying assault includes an element of felonious intent. *State v. Wanrow*, 91 Wn.2d 301, 306, 588 P.2d 1320 (1978); *see State v. Hopper*, 118 Wn.2d 151, 822 P.2d 775 (1992), *rev'g* 58 Wn. App. 210, 792 P.2d 171 (1990).

Washington has two degrees of manslaughter:

A person is guilty of manslaughter in the first degree when: (a) He recklessly causes the death of another person; . . .[.]

RCW 9A.32.060(1).

---

[3]Washington has consistently approved the felony murder rule. *State v. Crane*, 116 Wn.2d 315, 333, 804 P.2d 10, *cert. denied*, ___ U.S. ___, 115 L. Ed. 2d 1033, 111 S. Ct. 2867 (1991); *State v. Leech*, 114 Wn.2d 700, 712, 790 P.2d 160 (1990).

A person is guilty of manslaughter in the second degree when, with criminal negligence, he causes the death of another person.

RCW 9A.32.070(1). The mental elements of recklessness and criminal negligence are lesser included mental states of intent within the statutorily defined kinds of mental culpability. *State v. Bowerman*, 115 Wn.2d 794, 802 P.2d 116 (1990); RCW 9A.08.010(1)(d), (2).

The underlying felony with which Mr. Davis was charged was "committing or attempting to commit an assault in the second degree on Marion Charles Hayes . . .". The intentional felony, assault, which resulted in the death of Mr. Hayes, supplies the mens rea for the murder charge, by statutory design. *See State v. Harris*, 69 Wn.2d 928, 421 P.2d 662 (1966); RCW 9A.32.050(1)(b).

■ *State v. Dennison*, 115 Wn.2d 609, 626-27, 801 P.2d 193 (1990) and *State v. Frazier*, 99 Wn.2d 180, 191-92, 661 P.2d 126 (1983) hold manslaughter cannot be a lesser included offense of felony murder where the underlying felony is burglary in the first degree or robbery. The court reasoned the mental elements of manslaughter in the first and second degree, recklessness and criminal negligence respectively, are not elements of felony murder for which the requisite mental state is the one necessary for robbery or burglary. Second degree assault, however, includes a lesser offense, third degree assault, the mental element of which will support a manslaughter charge.

■ ■ Criminal negligence[4] is an element of assault in the third degree, a class C felony, former RCW 9A.36.031(c). When such an assault "causes the death of another person", each of the elements of second degree manslaughter is present. *See* RCW 9A.32.070(1). These elements are also

---

[4]Criminal negligence, RCW 9A.08.010(1)(d), is defined:

"A person is criminally negligent or acts with criminal negligence when he fails to be aware of a substantial risk that a wrongful act may occur and his failure to be aware of such substantial risk constitutes a gross deviation from the standard of care that a reasonable man would exercise in the same situation."

necessarily included in the elements of second degree felony murder when the underlying felony is second degree assault with a deadly weapon, RCW 9A.36.021(c). Because the jury was instructed on second degree assault with a deadly weapon as the underlying felony for the second degree murder charge, Mr. Davis was entitled to have the jury instructed on the lesser included offense of second degree manslaughter.

The second part of the *Workman* test requires that there be evidence to support the inference the lesser crime was committed. Recklessness is an essential element of manslaughter in the first degree and is also an element of an alternative manner of committing assault in the second degree, RCW 9A.36.021(1)(a).[5] No jury instruction on second degree assault under this subsection was proposed or given, nor is there evidence to support finding Mr. Davis possessed a mental state of recklessness. Accordingly, the court properly declined to give an instruction on manslaughter in the first degree.

Failure to give Mr. Davis' proposed instructions on criminal negligence and manslaughter in the second degree was error.

Finally, the jury was instructed that to convict Mr. Davis of second degree murder, it must find, *inter alia*, "(4) That Marion Charles Hayes was not a participant in [the assault] . . .". During deliberation, the jury asked: "In Instruction #10 #4 please define participant as regards [*sic*] to Marion Hayes [the victim]". The court responded: "Marion Hayes was not a 'participant in such crime' as provided in (4) of Instruction No. 10." Mr. Davis contends this was error.

On retrial, the court may find it advantageous to define participant in the instructions rather than respond to a jury inquiry.

---

[5]Under RCW 9A.36.021(1)(a), a person is guilty of second degree assault if he "[i]ntentionally assaults another and thereby recklessly inflicts substantial bodily harm; . . .".

We affirm the assault conviction, but reverse the felony murder conviction for failure to instruct on the lesser included offense of manslaughter in the second degree and remand for a new trial.

SHIELDS, C.J., and THOMPSON, J., concur.

Review granted at 119 Wn.2d 1007 (1992).