**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Delano Anthony ROBERTS,
Defendant–Appellant.**

No. 88–2963.

United States Court of Appeals,
Fifth Circuit.

Oct. 19, 1989.

Thomas Berg, Asst. Federal Public Defender, Roland E. Dahlin, II, Federal Public Defender, Houston, Tex., for defendant-appellant.

Frances H. Stacy, Asst. U.S. Atty., Henry K. Oncken, U.S. Atty., Paula C. Offenhauser and Terry Clark, Asst. U.S. Attys., Houston, Tex., for plaintiff-appellee.

Before KING, JOLLY and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge.

■ Delano Anthony Roberts appeals his conviction for possessing and importing more than five kilograms of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841, 952, 960, and 18 U.S.C. § 2. Pursuant to 18 U.S.C. § 3013, the trial court imposed a special assessment of $100.00. He claims that this assessment is improper on the ground that 18 U.S.C. § 3013 violates the Origination Clause of the United States Constitution. U.S. Const., Art. 1, § 7, cl. 1. Finding that Roberts' Origination Clause challenge is not properly before this Court because not raised in the district court,[1] we decline to entertain that challenge.[2]

Roberts also objects to the trial court's exclusion of proffered expert psychological testimony. Although we find that the exclusion of the testimony was improper, we find the error harmless. Therefore, we affirm Roberts' conviction.

Roberts, an Army Sergeant First Class, arrived at Houston Intercontinental Airport on a flight from Panama. When screened by the United States Customs Service, Roberts presented an official United States Passport and a customs declaration. The Customs official's suspicion was aroused because Roberts was dressed in a suit and tie rather than a uniform or casual attire ordinarily worn by traveling military personnel, because official passports should not be used by military personnel for pleasure travel, and because Panama is a known transit country for illegal drugs. Consequently, the agent placed a secondary inspection code on Roberts' declaration and allowed him to retrieve his luggage.

At the secondary area, the Customs agent inspected Roberts' suitcases and found several packages containing cocaine. When the agent punctured one package with a probe to obtain a sample, Roberts exclaimed, "Do not take any more out. Someone has to follow me for delivery." Although he said nothing further at the time, at trial Roberts claimed that he made this statement to advise the Customs agent that he was on a self-conceived solo mission to ferret out drug dealers.

Roberts was an administrative assistant to the Army's logistic director in the Republic of Panama and had top-secret security clearance. He testified at trial that from reading official files he had become aware of problems with drug smugglers posing as soldiers with official identification. Roberts had no training as a military police officer or drug investigator, but testified that he decided to help solve the drug problem when he was asked by a Colombian drug trafficker to make a delivery in New York. Roberts asserted that his plan was to notify Customs officials in Houston of his mission so that he could obtain assistance in making an arrest. He took no steps to do so. He did not advise his Commanding Officer or Panamanian law enforcement officials about his scheme because he said he was skeptical about whether the Colombian was actually a drug trafficker. He testified the Colombian drug dealer had provided him the plane ticket but it had been purchased by a tax exempt entity. The New York telephone number Roberts said was the number of his delivery contact was not a working number.

Roberts gave notice prior to trial, pursuant to Fed.R.Crim.P. 12.2(b), of his intent to utilize expert testimony regarding his mental condition as bearing on the issue of guilt. The trial judge granted the government's motion in limine to exclude the expert's proposed testimony on Roberts' personality traits. However, the case was tried to the court without a jury and the expert's testimony was proffered.

---

1. This issue should have been raised initially in the trial court on a motion to correct the sentence pursuant to Fed.R.Crim.Pro. 35. *United States v. Horton,* 646 F.2d 181 (5th Cir.1981), *cert. denied,* 455 U.S. 919, 102 S.Ct. 1274, 71 L.Ed.2d 459 (1982).

2. This Court has, however, rejected the identical challenge in *USA v. Herrada,* 887 F.2d 524 (5th Cir.1989).

■ On appeal, Roberts contends that the district court erred in refusing to admit the bulk of his expert's testimony. Trial courts exercise wide discretion in admitting and excluding relevant testimony of expert witnesses. *United States v. Cronn,* 717 F.2d 164 (5th Cir.1983), *cert. denied,* 468 U.S. 1217, 104 S.Ct. 3586, 82 L.Ed.2d 884 (1984). *Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590, *rehearing denied,* 419 U.S. 885, 95 S.Ct. 157, 42 L.Ed.2d 129 (1974). The court permitted the expert to testify that Roberts was both sane and competent, but refused to admit her testimony that Roberts' "naive and autocratic" personality traits were consistent with his claimed activity as a self-appointed vigilante. Such testimony would have corroborated Roberts' claim that he did not intend to violate the law and that he was working alone to apprehend drug dealers.

■ Evidence of a pertinent character trait of an accused is admissible to prove action in conformity with that trait. Fed. R.Evid. 404(a)(1). As used in this context, "pertinent" is synonymous with "relevant". *United States v. Hewitt,* 634 F.2d 277 (5th Cir.1981). Intent to distribute is an essential element of the crime with which the government charged Roberts. *United States v. Freeze,* 707 F.2d 132 (5th Cir. 1983). If the expert's testimony tended to make it more or less probable that Roberts willfully violated the law, it should have been admitted. *United States v. Angelini,* 678 F.2d 380 (1st Cir.1982). The psychologist's testimony would have supported Roberts' claim that he had no intent to violate the law. During the proffer, she opined that his personality was consistent with that of a person who might undertake a one-man unauthorized undercover operation.

■ In *United States v. Newman,* 849 F.2d 156 (5th Cir.1988), this Court held that when an entrapment defense is raised, expert psychiatric testimony is admissible to demonstrate that a mental disease, defect, or subnormal intelligence makes a defendant peculiarly susceptible to inducement. *Id.* at 165. The expert may testify that such a mental condition rendered the defendant incapable of forming the specific state of mind required for the offense. *Id.* Similarly, when, as here, a defendant raises a "reverse-sting" defense, expert psychological testimony should be admissible on the issue of whether a mental condition of the defendant rendered him incapable of forming the requisite intent.[3] Thus, we believe that the district court erred in not admitting the expert's testimony.

Although we conclude that the testimony of Roberts' expert witness was erroneously excluded by the trial court, our consideration of this case does not end here. Rather, we must determine whether the erroneous exclusion of evidence affected Roberts' substantial rights or constituted harmless error. Fed.R.Crim.P. 52(a). In this circuit, it is well settled that the test for harmless error in this context is "whether the trier of fact would have found the defendant guilty beyond a reasonable doubt with the additional evidence inserted." *United States v. Lay,* 644 F.2d 1087, 1091 (5th Cir. Unit A), *cert. denied,* 454 U.S. 869, 102 S.Ct. 336, 70 L.Ed.2d 172 (1981); *see also United States v. Lueben,* 812 F.2d 179, 187 n. 7 (5th Cir.1987).

■ In the case *sub judice,* upon finding Roberts guilty, the trial judge expressed his disbelief in Roberts' reverse-sting defense. He stressed that a period of nearly a week passed between the time the Colombian first contacted Roberts and the time they met to make final arrangements; Roberts had sufficient time to consider the implications of his involvement in the drug deal and to make appropriate arrangements with government officials. The trial

---

**3.** We note that the district judge did hear the expert's proposed testimony on proffer. Because he found it inadmissible, however, he could not consider it in making his determination as to whether Roberts possessed the requisite intent to violate the law. *Cf. United States v. Lueben,* 812 F.2d 179, 185 (5th Cir.1987) (District court found expert's testimony inadmissible, "and therefore did not consider it in making its determination on the issue of materiality [an element of the alleged offense]...."), *vacated in part on other grounds,* 816 F.2d 1032 (5th Cir. 1987).

court found it significant that Roberts waited to "notify" officials of his vigilante activity until he was collared by Customs officials. There was very strong evidence to support Roberts' conviction, and it is clear that even if the district court had admitted the proffered testimony, it would not have changed that court's determination of Roberts' guilt. Thus, the district court's failure to admit the proffered testimony did not affect Robert's substantial rights and resulted only in harmless error. Fed.R.Crim.P. 52(a).

For the foregoing reasons, Roberts' conviction is AFFIRMED.