[No. 61632-9. En Banc. August 31, 1995.]

The State of Washington, *Petitioner*, v. Ted Eakins, *Respondent*.

*Russell D. Hauge, Prosecuting Attorney,* and *Brian T. Moran* and *Pamela B. Loginsky, Deputies,* for petitioner.

*Law Offices of Michael A. Dunn,* by *Michael A. Dunn,* for respondent.

JOHNSON, J. — Ted Eakins was convicted of two counts

of second degree assault. He admitted pointing a loaded revolver at two people, but claimed drug- and alcohol-induced diminished capacity, so that he was not capable of forming specific intent to assault them. Only his specific intent was at issue at trial. The issue before us is whether his reputation for peacefulness is relevant under ER 404(a)(1) when only specific intent is at issue. The trial court refused to admit his proffered character evidence, finding it irrelevant to the issue of whether Eakins had the intent to support the assault charges. The Court of Appeals reversed, holding such evidence relevant to the issue of intent. We affirm the Court of Appeals.

### FACTS

When Shelley Lindal and Ted Eakins ended their romantic relationship, Eakins became despondent. On May 25, 1990, he went to Captain K's Restaurant in Bremerton where Lindal worked as a manager. After Eakins was seated, he became increasingly agitated and demanded to see Lindal. Because he was causing a disruption, Lindal finally asked him to leave. As she walked away, he threw a coffee cup at her, hitting her in the back, then pursued her into the bar.

Lindal and other employees summoned Mark Hansen, the restaurant's kitchen manager, to the bar where he confronted Eakins. After unsuccessfully attempting to push Hansen away, Eakins drew a loaded revolver and pointed it at Hansen's head. Katherine Yaw, the bartender, testified she heard two clicks, which she recognized as the sound of a gun, then saw Eakins point the revolver at Hansen's head or upper body and tell him to back off. Hansen testified Eakins threatened to shoot him if he did not move away. Eakins then held the revolver to Lindal's head and threatened to shoot her, after which he lowered the weapon and left the restaurant. He returned a moment later and gave the gun to Lindal, who placed it behind the bar. Eakins jumped over the bar, retrieved the revolver, and again left the restaurant.

About four hours later, Eakins turned himself in to the police. He was charged with two counts of second degree assault while armed with a deadly weapon, in violation of RCW 9A.36.021(1)(c).

At trial, Eakins conceded he had pointed the revolver at Ms. Lindal and Mr. Hansen but presented evidence of alcohol- and drug-induced diminished capacity. He testified it had become his practice each evening to take a triple dose of tranquilizers prescribed for his depression and wash them down with alcohol. Although this combination of drugs and alcohol caused him to have vivid nightmares, he said he took them to pass out and stop thinking. On the night of the assaults, Eakins said he took the drugs and alcohol and dreamed about confronting Lindal. He testified that when he realized he was not dreaming and his actions were real, he gave the revolver to Lindal and left.

At trial, David Rommen, a licensed professional therapist, testified Eakins was depressed and suffered from a personality disorder involving dependency upon Ms. Lindal, for which Eakins was taking prescribed tranquilizers. Mr. Rommen testified he was aware Eakins used alcohol with the tranquilizers, despite Rommen's advice not to mix alcohol with the tranquilizers. Mr. Rommen also testified he had been in contact with Eakins the night before the assaults and found Eakins to be incoherent, slipping in and out of consciousness, apparently in a delirium induced by drugs and alcohol. In therapy sessions with Mr. Rommen following the assaults, Eakins had difficulty remembering what happened the night of the assaults. Mr. Rommen testified he believed Eakins consumed as much as twenty-four ounces of alcohol on the night of the assaults.

Dr. Martin Haykin, a licensed and certified psychiatrist, testified Eakins was incapable of forming the intent to assault on the night in question, based on his depression and consumption of both alcohol and the prescription medication. He also described Eakins' behavior during the

assaults as consistent with a delirium induced by drugs and alcohol.

Ms. Lindal, Mr. Hansen, Ms. Yaw, and Julie Cathey (another restaurant employee) all testified Eakins appeared angry but not intoxicated or delirious the night of the assaults. Two police officers who interviewed Eakins four hours after the assaults testified he did not appear intoxicated and spoke clearly and coherently.

Eakins sought to offer fifteen lay character witnesses, each of whom would testify as to his peaceful nature. The trial court rejected the offered evidence, relying on *State v. Lewis*, 37 Wn.2d 540, 225 P.2d 428 (1950). Because Eakins admitted the charged acts, the court concluded the only issue was whether he had the requisite intent to assault and the offered character evidence was irrelevant as to that issue. Having excluded this evidence, the trial court subsequently refused to give an instruction on the lesser included offense of displaying a weapon in violation of RCW 9.41.270.

The Court of Appeals reversed, concluding reliance on *Lewis* was misplaced. It held intent or malice was an essential element of Eakins' offense and reputation evidence of his peaceful character was admissible under ER 404(a)(1) and ER 405(a). *State v. Eakins*, 73 Wn. App. 271, 278-79, 869 P.2d 83 (1994). The State petitioned for review, contending this holding conflicts with *State v. Janes*, 64 Wn. App. 134, 144-45, 822 P.2d 1238 (1992), *rev'd on other grounds*, 121 Wn.2d 220, 850 P.2d 495, 22 A.L.R.5th 921 (1993). We affirm the Court of Appeals.

## ISSUE

The sole issue raised in the State's petition is whether a defendant's reputation for peacefulness is relevant when the defendant has conceded the underlying acts giving

rise to charges of second degree assault while armed with a deadly weapon, in violation of RCW 9A.36.021(1)(c).

## ANALYSIS

The admissibility of character evidence by a defendant is governed by ER 404(a)(1):

(a) **Character Evidence Generally.** Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:

*(1) Character of Accused.* Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same[.]

ER 404(a)(1).

■ Where intent or malice is an essential element of an offense and the defendant denies having the mental state necessary to form the requisite intent, character evidence may be relevant and admissible to support an inference that the defendant lacks the necessary mental state. 1 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 101, at 549 (2d ed. 1994); 1A John H. Wigmore, *Evidence* § 56, at 1173-74 (1983).[1] The relevance of such character evidence is undiminished where, as here, intent is the only essential element in dispute. So long as character evidence offered by the defendant involves a "pertinent trait of his character," it is admissible.

We have not defined "pertinent" in the context of ER 404(a)(1). Federal courts interpreting identical language in Fed. R. Evid. 404(a)(1) have read the word "pertinent" as synonymous with "relevant." *See, e.g., United States v. Santana-Camacho,* 931 F.2d 966, 968 (1st Cir. 1991); *United States v. Roberts,* 887 F.2d 534, 536 (5th Cir. 1989); *United States v. Staggs,* 553 F.2d 1073, 1075 (7th Cir. 1977). Following this interpretation, a pertinent character trait

---

[1]ER 404(a)(1) was taken from and is identical to Fed. R. Evid. 404(a)(1). See Robert H. Aronson, *Evidence in Washington* Rule 404 cmt., at 404-1 (2d ed. 1993); 5 Karl B. Tegland, Wash. Prac., *Evidence*, at vii-xi, 364 (3d ed. 1989).

is one that tends to make the existence of any material fact more or less probable than it would be without evidence of that trait. ER 401.[2]

 Eakins was charged with two counts of assault in the second degree while armed with a deadly weapon, in violation of RCW 9A.36.021(1)(c).[3] An essential element of second degree assault is specific intent either to cause bodily harm or to create apprehension of bodily harm. *State v. Byrd*, 125 Wn.2d 707, 713, 887 P.2d 396 (1995). Although Eakins conceded the acts giving rise to the charges, he maintains he lacked the requisite specific intent because of diminished capacity caused by drugs and alcohol. Diminished capacity is an affirmative defense against second degree assault, and it must be supported by evidence of a mental condition and evidence showing the mental condition impaired the defendant's ability to form the required specific intent. *State v. Davis*, 64 Wn. App. 511, 515-17, 827 P.2d 298 (1992), *rev'd on other grounds*, 121 Wn.2d 1, 846 P.2d 527 (1993). Eakins offered expert testimony that he suffered from a mental condition caused by drugs and alcohol which impaired his ability to form the required specific intent. We must determine whether, under ER 404(a)(1), character evidence of Eakins' reputation for peacefulness is also relevant to determine whether he specifically intended to create apprehension of bodily harm or to cause bodily harm when he threatened Ms. Lindal and Mr. Hansen with his revolver.

The trial court excluded Eakins' character evidence in reliance on *State v. Lewis, supra,* in which the defendant was convicted of manslaughter for a death resulting from a hunting accident. Lewis admitted the act but denied he

---

[2]Some state courts have defined "pertinent" using other language, but their application of the rule is substantially indistinguishable in practice. *See People v. Miller*, 890 P.2d 84, 91-92 (Colo. 1995) (citing cases).

[3]RCW 9A.36.021(1) reads as follows, in pertinent part:

"**Assault in the second degree.** (1) A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree:

". . . .

"(c) Assaults another with a deadly weapon[.]"

was careless or negligent. This court upheld the trial court's refusal to admit testimony that Lewis "was careful in the handling of firearms on other occasions" because that evidence "did not tend to prove that he was careful when he fired the shot which killed Mrs. Packer." *Lewis*, 37 Wn.2d at 545. The defendant's specific intent was not at issue in *Lewis*. Consequently, *Lewis* does not control this case and we agree with the Court of Appeals that the trial court's reliance on *Lewis* was error.[4]

Division Two in this case explicitly disagreed with Division One's decision in *State v. Janes, supra*, regarding the admissibility of character evidence when specific intent is the only essential element at issue. In *Janes*, the defendant was convicted of second degree murder and two counts of second degree assault for killing his stepfather and firing at police officers when they arrived to arrest him. Janes claimed diminished capacity and self-defense based on "battered child syndrome." Janes contended the trial court erred by excluding evidence of his reputation for peacefulness offered to support his theory of diminished capacity. The Court of Appeals rejected his contention:

> Character evidence does not prove or disprove an element of a charged crime or a particular defense; rather, "[i]ts relevance is to permit, but not require, the jury to infer from the particular character trait that it is unlikely or improbable that the defendant committed the charged act." *State v. Thomas*, 110 Wn.2d 859, 865, 757 P.2d 512 (1988). Here, there is no dispute as to whether the defendant committed the act; the only issue is his mental state. Since his reputation is not probative of his mental state, it was properly excluded.

*Janes*, 64 Wn. App. at 144-45.

---

[4]It is not clear the testimony in *Lewis* involved character evidence. Eakins maintains the testimony in *Lewis* was opinion, not reputation evidence as required by ER 405. The Court of Appeals considered the testimony in *Lewis* to have regarded specific acts rather than reputation. *Eakins*, 73 Wn. App. at 279. In *Meyers v. Meyers*, 81 Wn.2d 533, 539, 503 P.2d 59, 59 A.L.R.3d 1318 (1972), we characterized *Lewis* as dealing with habit rather than a character trait. To decide Eakins' case, we need not determine whether the testimony in *Lewis* was character evidence. Because specific intent was not at issue in *Lewis*, that case does not control here.

■ The Court of Appeals in *Janes* incorrectly read *Thomas* as holding character evidence irrelevant to the issue of a defendant's mental state. *Thomas* held character evidence is relevant to the jury's determination whether "the defendant committed the charged act." This phrase refers inclusively to all essential elements of the charged offense. Where intent is an essential element of the crime charged, the defendant cannot be convicted of having "committed" the crime unless the element of intent is proved beyond a reasonable doubt.

■ *Janes* also may be distinguished factually from this case. *Eakins* involves the defense of diminished capacity caused by self-induced intoxication, while *Janes* involved alleged diminished capacity in the context of "battered child syndrome." Eakins' evidence of peaceful character when not influenced by drugs and alcohol was offered in support of expert testimony that his drug and alcohol abuse caused a mental condition that reduced or eliminated his ability to form specific intent. By showing his behavior on the night in question was out of character when he was not influenced by drugs and alcohol, the proffered evidence is relevant to show Eakins, but for his induced mental condition, would not or could not form the intent to assault. In contrast, Janes' evidence of peaceful character is not relevant to his diminished capacity defense in the factual context of his case. His previously peaceful behavior in the face of his stepfather's repeated abuse provides no information as to his mental state before the abuse began or during the episode in which he killed his father, nor does it make the diagnosis of "battered child syndrome" more or less likely. Janes' character evidence is inadmissible because it is not relevant in that specific factual context, not because it was offered on the element of intent.

The Court of Appeals in *Eakins* explicitly noted its disagreement with *Janes. Eakins*, 73 Wn. App. at 279 n.9. The court reasoned as follows:

> An accused in a criminal case is entitled to introduce repu-

tation evidence of a character trait pertinent to rebut the nature of the charge against him. ER 404(a)(1), 405(a); *State v. Arine*, 182 Wash. 697, 48 P.2d 249 (1935). Character evidence may be used circumstantially to show that the accused acted consistently with that character, *State v. Kelly*, 102 Wn.2d 188, 193, 685 P.2d 564 (1984), and is as much a part of the evidence as any other evidence. *State v. Allen*, 89 Wn.2d 651, 657, 574 P.2d 1182 (1978).

*Eakins*, 73 Wn. App. at 278. Relying on a standard evidence treatise, the Court of Appeals held Eakins' character evidence should have been admitted:

> Where the doing of the act charged is not in dispute, because conceded, it has been said that character no longer has any probative function, and should not be received, since character certainly cannot be set up merely in excuse. But, after all, so far as in criminal cases the criminal intent remains in issue, the good character of the defendant may be regarded as always relevant to disprove it, and the better way seems to admit it.

*Eakins*, 73 Wn. App. at 279 (quoting 1A Wigmore § 56, at 1173-74).

The statement from Wigmore is consistent with at least one other evidence treatise:

> [Evidence of pertinent traits of character] are relevant and admissible if the traits support inferences that the defendant probably did not do the acts charged to him *or did not have the necessary mental state to make him guilty of the charged offense*. Such evidence is also relevant and admissible *if it supports any defense against the charged crime*, including such affirmative defenses as coercion or self-defense.

(Italics ours.) 1 Mueller & Kirkpatrick § 101, at 549. Our review of the available evidence treatises has uncovered no other discussion of this issue.

While not directly on point, cases from other jurisdictions support the reasoning of the Court of Appeals in *Eakins*. In *United States v. Angelini*, 678 F.2d 380 (1st Cir. 1982), for example, the defendant was convicted of possession with intent to distribute a controlled substance. He

appealed the trial court's refusal to admit evidence through three character witnesses that he was law abiding and truthful. The First Circuit upheld the exclusion of evidence concerning truthfulness as not pertinent to the crime charged, but held the evidence the defendant was law abiding should have been admitted:

> Federal Rule of Evidence 404(a) states that an accused may introduce "[e]vidence of a pertinent trait of his character." The word "pertinent" is read as synonymous with "relevant." *United States v. Staggs*, 553 F.2d 1073, 1075 (7th Cir. 1977); 22 Wright & Graham, *Federal Practice and Procedure: Evidence* § 5236, at 383 (1978). Thus, the basic issue is whether the character trait in question would make any fact "of consequence to the determination" of the case more or less probable than it would be without evidence of the trait. *See* Fed.R.Evid. 401; *United States v. Staggs*, 553 F.2d 1073.
>
> Under this analysis, evidence of law-abidingness should have been admitted. Evidence that Angelini was a law-abiding person would tend to make it less likely that he would knowingly break the law. Such evidence has long been recognized as relevant. *See* 1 Wigmore, *Evidence* § 55 (Chadbourne rev. 1972).

*Angelini*, 678 F.2d at 381. Applying the same logic to this case, Eakins' proffered evidence of peacefulness, if believed by the jury, would make it less probable he would intentionally threaten another person with a deadly weapon if he were in full control of his faculties. Such evidence would be relevant to the element of intent, on which the State bears the burden of proof, *Byrd*, 125 Wn.2d at 713-16, and would bolster Eakins' claim of diminished capacity.

The potential relevance of such evidence to criminal intent also is apparent in *State v. Aplaca*, 74 Haw. 54, 837 P.2d 1298 (1992). In *Aplaca*, the defendant appealed her conviction for third degree assault arising from a confrontation between two corrections officers. Her sole defense at trial was that she lacked any criminal intent to assault. She claimed ineffective assistance of counsel on the ground her attorney failed to call witnesses, at least one of whom

would testify she was truthful and peaceable. The Hawaii Supreme Court reversed her conviction, holding that testimony could have had a direct bearing on the ultimate outcome of the case:

> We have stated that "[a]n accused has the right to give evidence of personal character traits associated with the basic nature of the offense with which he [or she] is charged as circumstantial evidence of his [or her] innocence." Character evidence demonstrating that Aplaca was a peaceful and nonviolent person at the time or prior to the incident would have bolstered her credibility and related directly to whether she would have intentionally or recklessly hit another person.

(Citations omitted.) *Aplaca*, 74 Haw. at 72-73.

In *State v. Donhauser*, 231 Neb. 114, 435 N.W.2d 186 (1989), the Nebraska Supreme Court impliedly allowed such character evidence on the issue of intent. The defendant was convicted of three counts of assault and one count of resisting arrest, arising from his attack on two persons in a bar. The defendant asserted he was too intoxicated to form the requisite intent and produced testimony that he had a character for peacefulness. The trial court admitted this character evidence and also evidence of specific acts offered by the State to rebut the character evidence. The Nebraska Supreme Court, rejecting the defendant's challenge to the State's evidence, implicitly assumed the trial court properly admitted the defendant's character evidence. *Donhauser*, 231 Neb. at 117-18.

Apart from *State v. Janes, supra*, and one older case cited by Wigmore,[5] we find no authority for excluding the defendant's character evidence of peacefulness where

---

[5]Wigmore cites only one case that involves character evidence introduced on the issue of specific intent: *People v. Green*, 217 Cal. 176, 17 P.2d 730 (1932) (in a murder case, the trial court did not abuse its discretion by excluding the defendant's character evidence as too remote from the charged act and because the defendant had conceded the act). *Green* did not hold the proffered evidence was irrelevant to the issue of intent because it was character evidence; the court noted with apparent approval that the testimony of several character witnesses had been admitted on the defendant's behalf. *Green*, 217 Cal. at 183. Rather, the court held the evidence was irrelevant because the defendant had admitted the

specific intent to cause apprehension of bodily harm or to cause bodily harm is an essential element of the crime charged that must be proved by the State. The treatises and cases cited above support the Court of Appeals decision that Eakins' character evidence should have been admitted.

## CONCLUSION

To show diminished capacity, a criminal defendant must produce expert testimony demonstrating the defendant suffered from a mental condition that impaired his or her ability to form the requisite specific intent. *Davis*, 64 Wn. App. at 515-17. Once this expert evidence has been received, the defendant's evidence of a pertinent character trait is admissible under ER 404(a)(1) to show circumstantially that the expert was correct. A pertinent character trait is one that is relevant to an essential element of the crime charged. Once the defendant has produced the appropriate expert testimony supporting a claim of diminished capacity, relevant character evidence is admissible even when specific intent is the only element at issue in the case.

Eakins submitted expert testimony in support of his diminished capacity defense, stating he suffered from a delirium on the night of the assaults which would have made him incapable of forming the specific intent to assault. His proffered character evidence is relevant under ER 401 to his claim of diminished capacity: it tends to make the existence of his specific intent to threaten Ms. Lindal and Mr. Hansen more or less probable than it would be without the evidence. Whether that evidence,

charge against him so that the "only question raised in his behalf is the application of the law to his situation." *Green*, 217 Cal. at 183. The only other cases cited by Wigmore that involve intent are readily distinguishable from the case before this court; each of those cases involves a defendant's refusal to submit to a military induction examination. *See Springer v. United States*, 148 F.2d 411 (9th Cir. 1945); *United States v. Garland*, 364 F.2d 487 (2d Cir.), *cert. denied*, 385 U.S. 978 (1966); *Harris v. United States*, 412 F.2d 384 (9th Cir. 1969). In each of the remaining cases cited by Wigmore, specific intent was not at issue. *See* 1A John H. Wigmore, *Evidence* § 56, at 1173 n.5 (1983).

together with its predicate expert testimony, is sufficient to create a reasonable doubt as to Eakins' specific intent is a question for a jury.

There is no basis under ER 403 to exclude this evidence. The State is not unfairly prejudiced by this evidence, nor is it likely to confuse the issues or mislead the jury so long as a proper limiting instruction is given. The evidence is not intrinsically wasteful of time or causing undue delay, and any tendency in that direction by the parties can be dealt with by the trial court.

■ It was error for the trial court to refuse to admit Eakins' evidence as to his reputation for peacefulness. Although he conceded the act, he claimed diminished capacity, thereby contesting and placing at issue the essential element of his specific intent. The jury reasonably may have concluded a defendant with a good reputation for peacefulness would be unlikely to intend to cause either bodily harm or the apprehension of bodily harm to another person, giving credence to Eakins' claim of diminished capacity. Had the evidence been admitted, it is reasonably possible Eakins might have been convicted of the lesser included offense of displaying a weapon, in violation of RCW 9.41.270. Because the outcome of the trial could have been materially affected had this evidence been admitted, Eakins' conviction should be reversed. *State v. Kelly*, 102 Wn.2d 188, 193, 685 P.2d 564 (1984).

We therefore affirm the Court of Appeals decision. Mr. Eakins' convictions for second degree assault are reversed and this case is remanded to the trial court for proceedings consistent with this opinion.

MADSEN and SMITH, JJ., and UTTER, J. Pro Tem., concur.

GUY, J. (concurring) — Defendant has two means to introduce evidence of his peacefulness. First, he can introduce it as traditional character evidence — "because I have the reputation for being peaceful, I could not have specifically intended to assault the victim." Justice Tal-

madge argues that the claim of diminished capacity "breaks any possible inferential chain linking peacefulness to his intent or state of mind at the relevant time." Dissent, at 510. I agree. How could evidence of your normal state of mind be relevant if you are claiming you were temporarily out of your mind?

However, a defendant can introduce such evidence as proof of the *extent* of his diminished capacity. This is not character evidence per se. Rather, the testimony is elicited to describe what the defendant was like before he became delusional. Evidence of peacefulness could create a baseline from which the trier of fact could measure diminished capacity. Because the Defendant does not seek to introduce evidence of peacefulness to prove he acted "in conformity therewith," ER 404(a) does not apply. Instead, the court weighs admission of the testimony by examining whether the evidence is relevant (ER 401) and whether its probative value outweighs any prejudicial effect (ER 403).

With this second means of admission, testimony of defendant's peacefulness would not be subject to the test established in *State v. Stumpf*, 64 Wn. App. 522, 827 P.2d 294 (1992). The rule in *Stumpf* concerns lay testimony which corroborates an expert's diagnosis of a mental disorder. Evidence of peacefulness does not prove the disorder; it establishes defendant's state of mind prior to the onset of such a condition. Therefore, the Court of Appeals test in *Stumpf* does not apply to the introduction of this evidence.

Defendant's proof is admissible not as character evidence but rather as evidence relevant to measure the extent of his diminished capacity. On this basis, the evidence was admissible and should not have been excluded. The court may limit the repetitiousness of the testimony if such be the situation. I concur with the result of the majority.

TALMADGE, J. (dissenting) — I dissent. I do not agree with the majority that a defendant's reputation for peace-

ful character is necessarily probative of his mental state when the defendant is in a delirium and points a loaded gun at his victim's head. Eakins was entitled to show diminished capacity through his own testimony and that of his psychiatrist, but the trial court properly excluded fifteen lay witnesses to his alleged peaceful reputation. Accordingly, we should reverse the decision of the Court of Appeals and reinstate Eakins' convictions.

## ANALYSIS

The principal fact issue in dispute in this case was whether Eakins suffered from diminished capacity. Eakins admits that at the restaurant he pointed his loaded revolver at the cook, Hansen, and held the gun to the head of his ex-girlfriend, Lindal, but contends that he did not form the requisite intent for an assault crime due to diminished capacity. In fact, Eakins claims that he could not form the intent to commit assault, thus rendering character evidence of peacefulness irrelevant.

### Diminished Capacity

Diminished capacity is a mental condition that causes an inability to form the requisite intent for the crime charged.[6] *State v. Ferrick*, 81 Wn.2d 942, 944, 506 P.2d 860, *cert. denied*, 414 U.S. 1094 (1973). The defense requires proof of a mental disorder, usually not amounting to insanity, demonstrated to specifically affect the capacity to form the culpable mental state for a given crime. *State v. Stumpf*, 64 Wn. App. 522, 525-26, 827 P.2d 294 (1992). "[C]ompetent" evidence of diminished mental capacity "is admissible wherever it tends logically and by reasonable inference to prove or disprove that a defendant

---

[6]The mental state required for the crime of second degree assault as in this case is the specific intent to cause bodily harm or a reasonable apprehension of harm in the victim. *State v. Byrd*, 125 Wn.2d 707, 713, 887 P.2d 396 (1995). Specific intent is the intent "to produce a specific result, as opposed to an intent to do the physical act" that produces the result. *State v. Davis*, 64 Wn. App. 511, 515, 827 P.2d 298 (1992), *rev'd on other grounds*, 121 Wn.2d 1, 846 P.2d 527 (1993).

was capable of forming a required specific intent." *Ferrick*, 81 Wn.2d at 944. There must be "substantial evidence" that establishes the mental condition and that logically and reasonably connects the mental condition with the inability to form the requisite intent or other mental state required to be guilty of the crime. *State v. Griffin*, 100 Wn.2d 417, 418-19, 670 P.2d 265 (1983); *State v. Davis*, 64 Wn. App. 511, 517, 827 P.2d 298 (1992), *rev'd on other grounds*, 121 Wn.2d 1, 846 P.2d 527 (1993).

Proof of this nexus is crucial. For example, in *Ferrick*, we affirmed a refusal to instruct on diminished capacity, where there was no "substantial evidence to establish [the] mental condition diminished or destroyed [the defendant's] capacity to form the specific intent to kill her mother." *Ferrick*, 81 Wn.2d at 945. Ferrick had been in and out of Western State Hospital three times, stopped taking her medication, and then fatally stabbed, strangled and beat her mother upon learning her mother had talked of recommitting Ferrick. *Ferrick*, 81 Wn.2d at 945. Clearly, evidence of a mental disorder alone, however severe, is an insufficient basis upon which to infer diminished capacity.

To prove the mental condition or disorder, and the required nexus between it and the alleged inability to form the requisite specific intent, a defendant generally must offer expert testimony. *Stumpf*, 64 Wn. App. at 526-27. The expert's testimony must be based upon an extensive foundation and provide an explanation of how the mental disorder caused the inability to form the specific intent.[7] The expert may not simply infer diminished capacity "from evidence of the mental disorder, and

---

[7]The required foundation includes proof of a mental disorder, rather than mere anger or other emotion; substantial supporting evidence in the record; a personal examination by a qualified expert who can opine with reasonable medical certainty; temporal proximity; a causal connection between the mental disorder and inability to form specific intent; and an adequate nonconclusory explanation of how the mental disorder caused the inability to form the specific intent. *State v. Edmon*, 28 Wn. App. 98, 102-03, 621 P.2d 1310, *review denied*, 95 Wn.2d 1019 (1981); *State v. Thamert*, 45 Wn. App. 143, 147, 723 P.2d 1204, *review denied*, 107 Wn.2d 1014 (1986); *State v. Harper*, 64 Wn. App. 283, 288, 823 P.2d 1137 (1992).

it is insufficient [for the expert] to give only conclusory testimony that a mental disorder caused an inability to form a specific intent." *State v. Edmon*, 28 Wn. App. 98, 103, 621 P.2d 1310, *review denied*, 95 Wn.2d 1019 (1981); *State v. Harper*, 64 Wn. App. 283, 288, 823 P.2d 1137 (1992); *State v. Thamert*, 45 Wn. App. 143, 147, 723 P.2d 1204, *review denied*, 107 Wn.2d 1014 (1986).

Lay testimony as to a defendant's "mental state" may *supplement* expert testimony, if expert testimony has already established the existence of a mental disorder and the requisite causal connection between the disorder and diminished capacity. *Stumpf*, 64 Wn. App. at 525. Only then may lay testimony be allowed, provided that:

> 1. The lay witness must have had a sufficient acquaintance with the defendant or must have had sufficient time to observe the defendant.
>
> 2. The witness must testify, at least in a general way, as to the peculiar facts and circumstances on which his or her conclusion is based.
>
> 3. The testimony must refer to the defendant's mental condition at or close to the time the witness made the observation and at or close to the time the offense at issue occurred.

(Citations omitted.) *Stumpf*, 64 Wn. App. at 526.

## Character Evidence

Eakins offered three types of witnesses to prove he had a mental condition or disorder specifically affecting his ability to intend the harm to the persons at whom he admittedly pointed his revolver. First, he testified he was depressed and taking triple doses of tranquilizers with bourbon every day so he "didn't have to think." Report of Proceedings (Nov. 28, 1990), at 163-66. He thought he was in a dream when he confronted Lindal and Hansen with his gun. Second, Eakins' therapist testified Eakins suffered from a personality disorder, and was in a delirium induced by drink and drugs at the time of the crimes. A psychiatrist opined that Eakins was incapable of forming

an intent to assault. Third, Eakins offered the testimony of fifteen lay witnesses as to his reputation for peacefulness.[8]

The majority holds that the fifteen lay witnesses' testimony should have been admitted under ER 404(a)(1), which states:

> **(a) Character Evidence Generally.** Evidence of a person's character or a trait of character is *not admissible for the purpose of proving action in conformity therewith on a particular occasion,* except:
>
> (1) *Character of Accused.* Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same[.]

(Italics mine). By its terms, ER 404(a)(1) generally addresses the use of character evidence to prove *action* in *conformity* with the character on a given occasion.[9]

The majority and the Court of Appeals conclude that character evidence may be used by a defendant to disprove the intent element of a crime. Our case law on this issue is sparse and not necessarily supportive of that view.

In *State v. Lewis*, 37 Wn.2d 540, 545, 225 P.2d 428 (1950), we held that evidence of a hunter's carefulness in handling

---

[8]The State's evidence to rebut the claim of diminished capacity was substantial and not challenged on review. The bartender testified that Eakins' gun clicked twice while he pointed it at Hansen. Lindal testified that Eakins said to her "I could shoot you right now and blow your fucking brains out." Report of Proceedings (Nov. 27, 1990), at 35, 172. The victims, other witnesses and police officers testified that Eakins was angry and coherent, not drunk or delirious. Report of Proceedings (Nov. 26, 1990), at 7-8; (Nov. 27, 1990), at 18, 29-30, 59-62; (Nov. 28, 1990), 12-13.

[9]Character evidence is circumstantial proof that one "acted consistently" therewith and generally is offered to prove the defendant "would not have committed the crime charged." *State v. Kelly*, 102 Wn.2d 188, 193-95, 685 P.2d 564 (1984). Evidence of character is relevant to permit "*the jury to infer from the particular character trait that it is unlikely or improbable that the defendant committed the charged act.* 1A J. Wigmore, *Evidence* §§ 54.1-56 (rev. ed. 1983)." (Italics mine.) *State v. Thomas*, 110 Wn.2d 859, 865, 757 P.2d 512 (1988) (evidence of good sexual character, to show defendant was not a rapist); *United States v. Angelini*, 678 F.2d 380 (1st Cir. 1982) (law-abiding character, to show defendant did not deal drugs).

firearms was properly excluded because it "did not tend to prove that he was careful when he fired the shot which killed Mrs. Packer." Thus, character evidence, Lewis' reputation for carefulness and prudence, was irrelevant in a manslaughter case. The majority dismisses the relevance of *Lewis* because the "defendant's specific intent was not at issue in *Lewis*." Majority, at 497. The issue in *Lewis* was negligence. Both negligence and intent are mental states that may be elements of criminal culpability. *See* RCW 9A.08.010(1). In *Lewis* and here, the conduct was admitted and only the defendant's mental state was at issue. *Lewis* controls because character evidence was properly excluded where it was offered to prove a culpable mental state on an occasion in which the defendant's conduct contradicted the character trait. *See also State v. Kelly*, 102 Wn.2d 188, 685 P.2d 564 (1984) (instances where character is an "essential element" of the criminal case under ER 405(b) are "comparatively few").

The majority attempts to distinguish *State v. Janes*, 64 Wn. App. 134, 144-45, 822 P.2d 1238 (1992), *rev'd on other grounds*, 121 Wn.2d 220, 850 P.2d 495, 22 A.L.R.5th 921 (1993), where the defendant admitted shooting his stepfather, claimed diminished capacity and battered child syndrome, and sought to introduce evidence of his peacefulness. The Court of Appeals held that a reputation for peacefulness was not probative of the defendant's mental state, consistent with the general view that character is not probative of diminished capacity or a mental state when a defendant admits acting contrary to the character trait. The majority suggests that *Janes* is factually distinguishable because his peaceful character "in the face of his stepfather's repeated abuse provides no information as to his mental state before the abuse began or during the episode in which he killed his father, nor does it make the diagnosis of 'battered child syndrome' more or less likely." Majority, at 498. The majority perceives, however, that

Eakins' peaceful character was admissible because "[b]y showing his behavior on the night in question was out of character when he was not influenced by drugs and alcohol, the proffered evidence is relevant to show Eakins, but for his induced mental condition, would not or could not form the intent to assault." Majority, at 498. I simply do not believe the majority has articulated a real distinction. *See also State v. Jackson*, 46 Wn. App. 360, 365, 730 P.2d 1361 (1986) (proper to exclude a reputation of sexual decency in a statutory rape case).

The cases from other jurisdictions cited by the majority do not support the use of character evidence to prove diminished capacity. *Angelini* concerned character evidence to disprove *conduct*, not a mental state or diminished capacity. In *State v. Aplaca*, 74 Haw. 54, 837 P.2d 1298 (1992), the court found ineffective assistance of counsel principally due to failure to investigate, and there was no attempt to use character evidence to prove diminished capacity. In *State v. Donhauser*, 231 Neb. 114, 435 N.W.2d 186 (1989), the use of character evidence to prove diminished capacity was not at issue and not discussed or ruled upon on appeal.

While it may be possible under ER 404(1)(a) and ER 405, as the majority and the Court of Appeals contend, to introduce evidence of a defendant's character with respect to an element of a criminal charge, that evidence must be relevant. ER 403. Evidence of a peaceful character was not relevant to any issue in contest here.

The nature of Eakins' diminished capacity claim breaks any possible inferential chain linking peacefulness to his intent or state of mind at the relevant time. Eakins offered proof he was in a dream state, a "delirium" brought on by depression, drink and drugs, and was *unable to form any intent to commit assault*. Report of Proceedings (Nov. 28, 1990), at 124. One cannot logically use Eakins' characteristic benign intent when in control of his faculties as a basis upon which to draw an inference as to his

ability to form an intent when his defense is that he was in a dream-like state of delirium.[10]

## Eakins' Offer of Proof

A final concern in this case relates to the inadequacy of Eakins' offer of proof with respect to the testimony of the fifteen witnesses. ER 103(a)(2); *State v. Ray*, 116 Wn.2d 531, 538-40, 806 P.2d 1220 (1991). Eakins provided a list of the witnesses. Clerk's Papers, at 5-18. He did not provide a summary of their testimony. The offer of proof on the record was general as well:

JUDGE MADDOCK: Mr. Dunn, you wanted to make an offer of proof?

MR. DUNN: Yes, Your Honor. I think we've covered it already, but I want to make it absolutely clear for the record that Mr. Eakins had a number of character witnesses. We've honed the list down to about fifteen who actually were intended to testify. And those witnesses would all testify that they have a substantial basis of knowledge. Their names are listed on a list of witnesses. I can read them on the record if you'd prefer, Your Honor.

JUDGE MADDOCK: I think I already have those and you've identified them as character witnesses on your witness list.

MR. DUNN: Right. And each of those witnesses would testify to I guess varying degrees of friendship with Mr. Eakins, based principally upon knowing him through his work. Each witness would give a substantial basis of knowledge for their knowledge of the reputation of the accused in the community for being a man of a peaceful nature based upon the length of acquaintanceship with the defendant and their basis of seeing him on a daily or weekly basis. Their testimony would be to the effect that he was a man of a peaceful nature, that he was mild mannered, polite and non-aggressive and nonviolent.

---

[10]The majority believes that "applying the logic" of a case in which character is used to prove conduct to this case means that Eakins' "evidence of peacefulness, if believed by the jury, would make it less probable he would intentionally threaten another person with a deadly weapon if he were in full control of his facilities." Majority, at 500. This conclusion relates more critically to whether Eakins *acted* in conformity with his character. It is ultimately irrelevant because Eakins' whole defense was inability to form the requisite intent, due to diminished capacity in that he was not in possession of his faculties. He acted out of character.

Report of Proceedings (Nov. 27, 1990), at 95-96.

The testimony of fifteen lay witnesses offered here has not been shown to meet any of the foundational requirements for proof of diminished capacity. The offer of proof does not indicate that the fifteen witnesses knew of any peculiar facts or circumstances about Eakins supporting a conclusion as to diminished capacity. Clearly, these witnesses' testimony would not have helped the jury resolve the issue of diminished capacity: characteristic peacefulness says aught about an alleged mental condition or disorder at or near the time of the events in this case. If diminished capacity may not be inferred from a defendant's severe mental illness, a jury should not be able to infer diminished capacity from lay testimony of Eakins' peaceful character.

The trial court did not abuse its discretion in excluding the character testimony of fifteen witnesses in this case where Eakins admitted the conduct argued an inability to formulate an intent to assault, and acted out of character with his supposed reputation for peacefulness. The Court of Appeals should be reversed and Eakins' convictions reinstated.

DURHAM, C.J., and DOLLIVER, J., concur with TALMADGE, J.