# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 78093-0-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| RYAN MARCUS GONZALEZ, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: July 15, 2019 |
| | ) | |

MANN, A.C.J. — Ryan Gonzalez appeals his conviction for burglary in the first degree and felony violation of a court order. Gonzalez argues that the trial court violated his constitutional right to present a defense by (1) excluding two witnesses who he claims were prepared to testify as to his victim's reputation for peacefulness and (2) denying his request to put on evidence of allegedly false reports of abuse that his victim had made against her previous boyfriends. We affirm.

I.

On April 13, 2017, shortly after being released from jail, Gonzalez showed up at his ex-girlfriend Michelle Wirth's apartment. Gonzalez knew that he had a no-contact order in place but wanted to speak with Wirth about a possible reconciliation. A few

days later the pair rekindled their intimate relationship. Then, on April 19, 2017, Gonzales and Wirth spent the day together. Wirth had a late morning hair appointment, which Gonzalez attended with her. While Wirth was getting a haircut, Gonzalez went to a nearby bar and began to drink. After Wirth's haircut finished, the pair went to a pizza place and continued to drink. They were later joined by Wirth's friend, Travis Sanders.

While at the pizza place, Gonzalez continued to drink until he became intoxicated. The three stayed there for a few hours, eating pizza, listening to music, and hitting a broken television with a hammer. When Gonzalez left to attend a family dinner, Wirth and Sanders went to a local bar to discuss Wirth's relationship with Gonzalez.

A few hours later, Gonzalez joined Wirth and Sanders at the local bar. Wirth and Sanders became uncomfortable because Gonzalez was intoxicated but continued to drink. After leaving the bar, the three went to Wirth's apartment building. Wirth refused to let Gonzalez in because he was drunk and she was concerned about his behavior. Eventually, Gonzalez agreed to leave and the three separated: Wirth went up to her apartment, Sanders went back to his house, and Gonzalez left. Wirth then called Sanders on the phone to continue their conversation.

About a half hour later, Gonzalez entered Wirth's unlocked apartment without her permission. Wirth was still on the phone with Sanders at the time. Sanders heard Wirth say "Crap, Ryan's at the door, I got to go. Ryan, what are you doing here? How did you get in? Why are you here?" before the line disconnected. Sanders immediately rushed back to Wirth's apartment.

Meanwhile, Gonzalez began assaulting Wirth. He spat in her face and choked her. He punched and kicked Wirth in the face numerous times. At some point,

Gonzalez stopped the assault, knocked Wirth's broken TV to the floor, sat down on the ground, started crying, and threatened to kill himself. Wirth then convinced Gonzalez to leave the apartment with her.

When the pair got outside, Sanders was at Wirth's apartment building door trying to get in. Wirth ran up to Sanders and said, "Ryan just beat the crap out of me." Hearing this, Gonzalez fled the scene.

Wirth did not want to call the police due to fear that Gonzalez would go back to jail so Wirth and Sanders went to a local bar to discuss what happened. On the way back to Wirth's apartment, Sanders eventually convinced Wirth to call the police. Before the police arrived, however, Gonzalez returned. Sanders told Gonzalez that the police were on their way and Gonzalez fled again.

Seattle police officers arrived soon after. Once they learned that Gonzalez had recently fled the scene, they began to search the area for someone matching his description. Within minutes, police officers located Gonzalez a few blocks from Wirth's apartment and arrested him. Police officers testified that upon his arrest Gonzalez was visibly intoxicated and acting belligerently towards the officers.

Once Gonzalez was arrested, police officers returned to Wirth and called for medical support. By this time, Wirth had a visible black eye, abrasions, and scratches on her neck and arms. Police officers also entered Wirth's apartment and noted that it looked like there had been a fight inside.

The State charged Gonzalez with domestic violence burglary in the first degree, domestic violence felony violation of a court order, and interfering with domestic violence reporting stemming from the April 19th incident. The State also charged

-3-

Gonzalez with domestic violence misdemeanor violation of a court order based on his showing up at Wirth's apartment on April 13th. The jury found Gonzalez guilty of counts one and two—domestic violence burglary in the first degree and domestic violence felony violation of a court order—but not guilty of counts three and four. In a bifurcated portion of the trial, the court found that the rapid recidivism aggravator as to counts one and two was warranted. The court sentenced Gonzalez to 90 months in prison.

II.

Gonzalez argues that the trial court wrongly excluded two of his proffered witnesses: Kirsten Beal and Chris Tremblay. Midway through trial, Gonzalez gave notice that he intended to call Beal and Tremblay to testify as to Wirth's reputation for peacefulness. The State objected on two grounds: that Tremblay was a late, surprise witness that should not be allowed, and that both Beal and Tremblay were improper character witnesses under ER 608.

The Court held the following colloquy with Gonzalez's counsel, Ms. Pewitt:

> Ms. Pewitt: . . . we were just picking two people who—from the community who could testify to reputation of peacefulness and reputation for truthfulness, and Ms. Beal would be one of them.
> The Court: So Ms. Beal you want to ask for reputation for truthfulness?
> Ms. Pewitt: For peacefulness.
> The Court: For peacefulness. Okay, and what about Mr. Tremblay?
> Ms. Pewitt: Mr. Tremblay would be reputation for peacefulness, as well.
> . . .
> The Court: Okay. Ms. Meyers, do you want to respond . . .
> Ms. Meyers: Yes . . . Reputation for peacefulness isn't admissible with the charges . . . . And then Tremblay, I just—this isn't trial by surprise . . . . I also don't think that there's any basis to believe that they can lay the proper foundation . . .
> The Court: Setting aside for a moment whether the proper foundation can be found, is it appropriate to allow a witness to testify to Ms. Wirth's reputation for peacefulness in the context of this case?
> Ms. Meyers: No. I'm sorry, I thought they said he was going to testify to about truthfulness.

-4-

The Court: No, I think I said that and she corrected me. It's peacefulness for both of them, correct?

Ms. Meyers: Oh, no, totally inappropriate. It only applies in a self-defense case.

The Court: Right. So is that not the case, Ms. Pewitt . . .

Ms. Pewitt: It may be . . . I'll just defer to the Court.[1]

The trial court then ruled: "Mr. Tremblay is excluded from testifying for two reasons. One, delayed disclosure with no compelling reason, and both Mr. Tremblay and Ms. Beal, given that they were only to be offered for reputation for peacefulness and given that that's not relevant in this case, I will exclude each of them."

Gonzalez asserts that this ruling was in error. He argues that he actually sought to have Beal and Tremblay testify as to his reputation for peacefulness and that ER 404(a)(1) allows such evidence. Therefore, Gonzalez contends, the trial court abused its discretion by preventing him from calling Beal and Tremblay.[2] We disagree.

We review the trial court's exclusion of evidence for an abuse of discretion. State v. Swan, 114 Wn.2d 613, 658, 790 P.2d 610 (1990). "A trial court's evidentiary ruling is an abuse of discretion only if it is manifestly unreasonable or based upon untenable grounds or reasons." State v. Perez-Valdez, 172 Wn.2d 808, 815, 265 P.3d 853 (2011). Further, we will not reverse a trial court's evidentiary decision unless no reasonable person would have decided the matter in the same way. State v. Castellanos, 132 Wn.2d 94, 97, 935 P.2d 1353 (1997).

Gonzalez argues that he sought to have Beal and Tremblay testify as to his reputation for peacefulness and that ER 404(a)(1) allows a defendant to introduce

---

[1] (Emphasis added.)

[2] Gonzalez makes no argument as to whether the trial court erred in prohibiting Tremblay's testimony based on the delayed disclosure. As such, Gonzalez has waived any such argument. Kadoranian v. Bellingham Police Dep't, 119 Wn.2d 178, 191, 829 P.2d 1061 (1992) (an assignment of error not briefed is deemed waived).

evidence of a pertinent trait of their own character. The State argues that Gonzalez did not offer these two witnesses to testify as to his reputation for peacefulness, but to testify as to Wirth's reputation for peacefulness. This, the State argues, is prohibited by ER 404(a)(2) except when offered to rebut evidence that the victim was the first aggressor after the defendant argues self-defense in a homicide case.

ER 404(a) provides that

[e]vidence of a person's character . . . is not admissible for the purpose of proving action in conformity therewith . . . except:
(1) Character of Accused. Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same;
(2) Character of Victim: Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor.

The term "pertinent" in ER 404(a) is synonymous with the term relevant and the defendant's reputation for peacefulness is relevant to the specific intent to commit assault. State v. Eakins, 127 Wn.2d 490, 492, 902 P.2d 1236 (1995). Therefore, we must first determine the purpose for which Gonzalez offered this testimony. If Gonzalez sought to have Beal and Tremblay testify as to his own reputation for peacefulness, then under ER 404(a)(1) and Eakins, the trial court should have allowed him to do so. However, if Gonzalez actually sought to have Beal and Tremblay testify as to Wirth's reputation for peacefulness, then under ER 404(a)(2), the trial court was correct to exclude the testimony.

We agree with the State that below Gonzalez wanted to have Beal and Tremblay testify as to Wirth's reputation for peacefulness. This is borne out by three specific points in the record. First, the trial court confirmed as such during its colloquy on this

matter. The court asked counsel for the State whether "is it appropriate to allow a witness to testify to Ms. Wirth's reputation for peacefulness" and when given the chance, defense counsel did not correct this statement.[3]

Second, before trial, the defense explained that Beal "will testify about statements made to her by [Wirth] . . . about her personal observations of Wirth and about how Wirth recently attacked her after getting angry about this case." The State objected to this use of Beal, arguing: "they would like for her to testify about an incident where. . . she alleges during [a] conversation that Miss Wirth assaulted her . . . I don't see how that tends to prove any fact at issue." To which, the defense responded: "Wirth has . . . represented herself as somebody who avoids conflict and is a peaceable person. And [Beal] is an example of her—people that we've interviewed are—there's a lot of people who are quite fearful of her."[4]

Third, Gonzalez submitted an affidavit by Tremblay about his testimony. In his affidavit, Tremblay devotes a total of three sentences to Gonzalez, describing how they know each other and Gonzalez's work ethic. Tremblay does not mention anything about Gonzalez's reputation in the community or reputation for peacefulness. Tremblay then spends the next page and a half describing how he knows Wirth, how he witnessed Wirth fight with her ex-boyfriend, and how he generally dislikes Wirth.

Taken together, the record demonstrates that Gonzalez wanted to call Beal and Tremblay to testify about Wirth's reputation for peacefulness, not his own. And as the burden to establish the admissibility of proffered evidence rests on the proponent, State

---

[3] (Emphasis added.)
[4] In pretrial rulings, the Court prohibited the defense from calling Beal in its case-in-chief but reserved on whether the defense could call Beal to rebut prior testimony.

v. Giles, 196 Wn. App. 745, 757, 385 P.3d 204 (2016), it was up to Gonzalez to show that the proffered testimony was admissible. As he failed to do so, the trial court did not abuse its discretion by excluding the testimony of Beal and Tremblay's testimony under ER 404(a).

III.

Gonzalez next asserts that the trial court wrongly excluded evidence of Wirth's prior false accusations of abuse against other men. Gonzalez argues that this was an abuse of the trial court's discretion. We disagree.

At trial, Gonzalez offered police reports from three events between 2011 and 2012 documenting complaints Wirth had made years before against other men, as evidence that Wirth had a "retaliatory pattern of making false accusations against people when she believes they have been disloyal or slighted her." Gonzalez argued that the evidence was not being offered as character evidence under ER 404(a) or impermissible propensity evidence, but was admissible under ER 404(b) to show Wirth's motive to falsely accuse Gonzalez. The State objected to the evidence under ER 404, arguing that none of the records actually showed that Wirth's past allegations were false, and that there was no connection between Wirth's prior reports about other people and Gonzalez.

The trial court excluded the evidence under ER 404(a) as improper character evidence in the form of specific instances of conduct and as improper evidence of untruthfulness under ER 608. The trial court added:

> You may, however, on cross-examination inquire of Ms. Wirth along the lines of, for example: Isn't it true that in the past on three separate occasions you have made formal complaints to the police about and

assault and then recanted? Something along that line. And then yes or no, and you live with the answer.

We review a trial court's evidentiary rulings for abuse of discretion and defer to those rulings unless no reasonable person would take the position adopted by the trial court. Castellanos, 132 Wn.2d at 97.

Character evidence offered under ER 404(a)(2) to show a pertinent character trait of a victim must be in the form of reputation evidence, not evidence of specific acts. ER 405; State v. Hutchinson, 135 Wn.2d 863, 886, 959 P.2d 1061 (1998). Under ER 404(b), evidence of other wrongs or acts is not admissible to prove the character of the person in order to show action in conformity therewith, but may be admissible for other purposes, such as proof of motive. The credibility of a witness may be attacked or supported by reputation evidence. ER 608(a). But specific instances of conduct of the witness for the purpose of attacking their credibility may not be proved by extrinsic evidence. Specific instance may, at the discretion of the court, be inquired into on cross-examination. ER 608(b). "The burden of demonstrating a proper purpose is on the proponent of the evidence . . . [and] evidence of prior misconduct is presumptively inadmissible." State v. Gresham, 173 Wn. 2d 405, 420-21, 269 P.3d 207 (2012).

Gonzalez argues that the trial court erred by excluding the exhibits documenting prior reports because this was evidence of Wirth's motive or plan. Gonzalez contends that the prior reports help show that Wirth has a habit of falsely accusing her boyfriends of abuse when they start to pull away from her. But evidence that Wirth has falsely accused her ex-boyfriends of assault in the past, intending to show that she is doing the same thing here, is precisely the sort of propensity evidence that ER 404 prohibits.

Gonzalez cites Perez-Valdez and State v. Lee, 188 Wn.2d 473, 396 P.3d 316 (2017), as support for his contention that the police reports were admissible evidence of Wirth's motive or plan. Neither case supports this proposition.

In Perez-Valdez, the defendant was charged with the rape of his two adoptive daughters. 172 Wn.2d at 814-15. The trial court did not allow the defendant to introduce evidence that the victims had set fire to their subsequent foster home as evidence that the girls took extreme measures to get out of homes they disliked, finding that the evidence was unduly prejudicial. 172 Wn.2d at 814-15. Gonzalez asserts that this case shows that his proffered evidence was admissible and the only difference is that his evidence is not unduly prejudicial.

But in Perez-Valdez the desired evidence was excluded because the defense did not lay a proper foundation to show that the arson was sufficiently related to the girls' desire to be removed from their foster home. 172 Wn.2d at 816. Similarly here, the trial court concluded that Gonzalez did not lay a proper foundation to show that Wirth's prior accusations of abuse were sufficiently related to his asserted motive. In distinguishing Perez-Valdez, the court said: "[i]n this case, the motive that I keep hearing is a motive to lie, a motive to punish, which is not—it's not the same . . . . I don't believe that there is evidence to support that. And a motive to lie just in general is not enough."

In Lee, the trial court allowed the defendant to cross-examine the victim about a prior false accusation, but did not allow that defendant to introduce extrinsic evidence about the prior false accusations. 188 Wn.2d at 488. The Supreme Court noted that "[r]ather than demonstrate a specific bias or motive to lie, which would be highly probative, the evidence invited the jury to infer that [the victim] is lying because she had

lied in the past." Lee, 188 Wn.2d at 486. This is precisely the same thing that the trial court did here. The court allowed Gonzalez to cross-examine Wirth on her prior accusations. The court did not allow Gonzalez to introduce the prior reports because that would have invited the jury to infer that Wirth was lying because she allegedly lied in the past, precisely the type of evidence that ER 404 and 608 prohibits.

ER 404 prohibits evidence of a person's character for the purpose of proving action in conformity therewith. And ER 608(b) prohibits a party from attacking a witness's credibility through the use of extrinsic evidence. Gonzalez's attempt to introduce the police reports to show both that Wirth had previously lied about abuse and that she was doing so again was prohibited by ER 404. Further, the police reports were extrinsic evidence that Gonzalez wanted to use to attack Wirth's credibility. The trial court did not abuse its discretion in prohibiting the police reports but giving Gonzalez the opportunity to ask about the specific instances underlying those reports on cross-examination.

## IV.

Finally, Gonzalez asserts that the trial court violated his Sixth Amendment right to present a defense by excluding the testimony of Beal and Tremblay and the police reports. The right to defend oneself against accusations by the State is guaranteed by both the United States and the Washington Constitutions. U.S. CONST. amend. VI; WASH. CONST. art. 1. "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's allegations." Chambers v. Mississippi, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). But a defendant "does not have an unfettered right to offer [evidence] that

is . . . inadmissible under standard rules of evidence." <u>Taylor v. Illinois</u>, 484 U.S. 400, 410, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988). Because the trial court's exclusion of Gonzalez's proffered evidence was restricted to evidence that was inadmissible under standard rules of evidence, the trial court did not violate Gonzalez's Sixth Amendment right to present a defense.

We affirm.

_____ Mann, A.C.J.

WE CONCUR:

_____

_____ Chun, J.